COCHRAN, Appellant,

v.

COLUMBIA GAS OF OHIO, INC., Appellees, et al.

[Cite as *Cochran v. Columbia Gas of Ohio, Inc.* (2000), 138 Ohio App.3d 888.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 00AP–72.

Decided Sept. 26, 2000.

*Law Offices of Mowery & Youell, Gary A. Reeve, F. Michael Speed, Jr.*, and *Spencer M. Youell*, for appellant.

*Porter, Wright, Morris & Arthur LLP, Adele E. O'Conner* and *Robert W. Edmund*, for appellee Columbia Gas of Ohio, Inc.

*James J. Brudney, Jr.*, for Ronald Litvak, M.D.

BOWMAN, Presiding Judge.

Appellant, Jerry W. Cochran, filed this lawsuit after he was terminated from his job by appellee, Columbia Gas of Ohio, Inc. The Franklin County Court of Common Pleas granted summary judgment in favor of appellee. Appellant filed a notice of appeal,[1] raising the following three assignments of error:

"1. The trial court erred in determining that there were not material facts in dispute sufficient to deny defendant Columbia Gas of Ohio's motion for summary judgment on plaintiff's claim for wrongful discharge based on handicap discrimination.

"2. The trial court erred in determining that there were material facts in dispute sufficient to deny defendant Columbia Gas of Ohio, Inc.'s and Defendant

---

1. Appellant also appealed the trial court's grant of summary judgment in favor of defendant Ronald Litvak, M.D. On April 5, 2000, however, the parties filed a stipulated dismissal, with prejudice, of all claims and appeals pending against Dr. Litvak.

Dr. Litvak's Motion for summary judgment regarding plaintiff's public policy tort.

"3. The trial court erred in determining that there were not material facts in dispute sufficient to deny Defendant Columbia Gas of Ohio, Inc.'s motion for summary judgment and defendant Dr. Litvak's motion for summary judgment regarding plaintiff's claim for intentional infliction of emotional distress."

Appellate court review of a summary judgment motion is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841, 843–844. Pursuant to Civ.R. 56(C), summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343, 345. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying the portions of the record that establish the absence of a genuine issue of fact on a material element of the nonmoving party's claim. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264, 273–274. After the moving party satisfies this initial burden, the nonmoving party bears a reciprocal burden to respond by affidavit, or as otherwise provided in Civ.R. 56, and must set forth specific facts showing the existence of a genuine issue for trial. Civ.R. 56(E). If the nonmoving party fails to so respond, summary judgment, if appropriate, shall be entered against him. Civ.R. 56(E).

For the reasons that follow, we affirm in part and reverse in part the judgment of the trial court.

Appellant supervised approximately fifteen employees at appellee's Bangs, Ohio operating facility. On June 25, 1998, appellee's human resources department received a report that appellant had taken prescription pain killers from fellow employees. In light of this information, the human resources department launched an investigation, interviewing eight employees, including appellant.

During the investigation, David Ufferman, one of appellant's subordinates, told an investigator that appellant had struck him with a notebook, causing Ufferman to fall to the ground. Leon Lannoy, another one of appellant's subordinates, claimed to be an eyewitness to this incident. Lannoy and Ufferman also told investigators that appellant had grabbed Lannoy by the neck and stated: "You little so and so, when I tell you to come into work, you better do it." They also claimed that they saw appellant holding an open pocketknife to the neck and genitals of Corey Cline, another subordinate of appellant. In his affidavit, Cline

affirmed that the incident had occurred and stated that, while he believed appellant was joking, he considered such conduct inappropriate in the workplace. Appellant denied that any of these incidents took place. It is undisputed, however, that these incidents were related to the investigations.

In the wake of this investigation, in July 1998, appellee removed appellant from his supervisory position and suspended him for two weeks. Appellee also referred appellant for physical and psychiatric exams to determine his fitness to work. The doctor who conducted the physical exam concluded that appellant was physically fit for duty.

The psychiatric evaluation was conducted by Dr. Ronald Litvak, a board certified forensic psychiatrist. Based on his personal evaluation of appellant, Dr. Litvak concluded that appellant did not have a mental disorder; however, appellee had relayed to Dr. Litvak the results of its investigation and, based on that information, Dr. Litvak concluded that appellant may have been untruthful during Dr. Litvak's evaluation. Consequently, Dr. Litvak opined that "[i]t cannot be determined if the behavior in question at work is due to a mental disorder or not." He concluded that appellant "pose[d] a significant risk of substantial harm to the health and/or safety of other employees." In an addendum to his report, Dr. Litvak recommended that appellee consider alternatives in handling the matter such as terminating appellant's employment. Based on Dr. Litvak's determination, appellee terminated appellant on October 16, 1998.

In his first assignment of error, appellant contends that he provided material facts sufficient to withstand appellee's motion for summary judgment on appellant's claim for wrongful discharge based on handicap discrimination. Appellant argues that he was terminated unlawfully because appellee regarded him as having a mental impairment.

R.C. 4112.02 provides:

"It shall be an unlawful discriminatory practice:

"(A) For any employer, because of the * * * handicap * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

"Handicap" is defined as:

"a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeking, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; *or being regarded as having a physical or mental impairment.*" (Emphasis added.) R.C. 4112.01(13).

■ In order to establish a prima facie case of handicap discrimination, the person seeking relief must demonstrate "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Hood v. Diamond Products, Inc.* (1996), 74 Ohio St.3d 298, 658 N.E.2d 738, paragraph one of the syllabus.

■ "Once the plaintiff establishes a prima facie case of handicap discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken." *Id.* at 302, 658 N.E.2d at 741, citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 197, 20 O.O.3d 200, 203, 421 N.E.2d 128, 131–132. "Legitimate, nondiscriminatory reasons for the action taken by the employer may include * * * the inability of the employee * * * to * * * perform, with reasonable accommodations, the essential functions of the job in question." *Hood,* 74 Ohio St.3d at 302, 658 N.E.2d at 741–742. "[I]f the employer establishes a nondiscriminatory reason for the action taken, then the employee * * * must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." *Id.,* citing *Plumbers & Steamfitters* at 198, 20 O.O.3d at 203, 421 N.E.2d at 132. " '[A] reason cannot be proved to be "a pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason.' " *Brown v. Renter's Choice, Inc.* (N.D.Ohio 1999), 55 F.Supp.2d 788, 795, quoting *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407, 418–419, fn. 4. Ohio courts have held that, when interpreting R.C. Chapter 4112, it is appropriate to look at analogous federal statutes and case law. See *Wooten v. Columbus, Div. of Water* (1993), 91 Ohio App.3d 326, 334, 632 N.E.2d 605, 610.

The evidence refutes appellant's claim that appellee regarded him as having any sort of a mental impairment that would entitle him to relief under R.C. 4112.02. While appellee terminated appellant in light of Dr. Litvak's report, in that report Dr. Litvak stated that he was unable to determine whether appellant's behavior was due to a mental disorder. Moreover, Dr. Litvak's personal evaluation of appellant demonstrated that appellant did *not* have a mental disorder. It is mere speculation on the part of appellant that appellee formed a belief that contradicted Dr. Litvak's opinion.

Appellant suggests that "being perceived to be a 'potential danger' " by itself amounts to a perceived mental impairment. Appellant was unable, however, to provide any authority for this proposition. The cases that appellant cites are distinguishable. *Gilday v. Mecosta Cty.* (C.A.6, 1997), 124 F.3d 760, did not address what is required to establish a "regarded as" claim of handicap discrimi-

nation, as the parties in that case agreed that the employee's diabetes constituted an actual physical impairment. In *Holihan v. Lucky Stores, Inc.* (C.A.9, 1996), 87 F.3d 362, 366, the court concluded that the employee presented sufficient evidence that he was regarded as mentally impaired because his employer had received several doctors' reports diagnosing the plaintiff with depression, anxiety and stress. Similarly, the court determined in *Stradley v. Lafourche Communications, Inc.* (E.D.La.1994), 869 F.Supp. 442, 443–444, that an employee presented evidence that he was regarded as mentally impaired where the employee had been diagnosed with Adjustment Disorder with Mixed Emotional Features and his supervisor testified that he believed that the employee was suffering from acute anxiety and depression.

■ In the absence of any evidence or authority whatsoever, this court is unwilling to conclude that an employee is perceived as mentally impaired merely because his employer believes that the employee's behavior poses a potential danger, where an evaluating psychiatrist has been unable to diagnose an actual mental impairment. This court finds that appellant has failed to provide evidence that he was regarded as having a mental impairment.

■ Even if appellant had established a *prima facie* case of handicap discrimination, summary judgment would be warranted for the additional reason that appellee provided a legitimate, nondiscriminatory reason for the termination, and appellant has provided no evidence that the proffered reason was a pretext for impermissible discrimination.

■ The undisputed evidence demonstrates that appellee received corroborated reports that appellant had struck an employee with a notebook, grabbed an employee around the neck, and brandished an open pocketknife. The evidence further demonstrates that Dr. Litvak concluded that appellant posed a risk to the safety of other employees, and that appellee terminated appellant based on Dr. Litvak's recommendation. Such circumstances constitute a legitimate reason for termination. Laws protecting employees from handicap discrimination do "not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge—in jeopardy of violating the [law] if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone." *Palmer v. Circuit Court of Cook Cty., Illinois* (C.A.7, 1997), 117 F.3d 351, 352. Indeed, the Ohio legislature expressly provided that an employer may terminate a handicapped employee if that employee places other employees at risk. See R.C. 4112.02(L) (stating that R.C. 4112.02[A] does not require employment of a handicapped person "under circumstances that would significantly increase the occupational hazards affecting * * * other employees").

Appellant asserts that there is a genuine issue of fact as to whether the reported incidents took place. The investigators interviewed appellant, however, before he was terminated and knew his side of the story. Even though appellant denies that the incidents occurred, the undisputed evidence demonstrates that appellee terminatéd appellant because it believed he posed a potential threat. Appellee's reason is lawful. See *Pesterfield v. Tennessee Valley Auth.* (C.A.6, 1991), 941 F.2d 437, 443 (noting that the employer was justified in terminating an employee based on the employer's "good faith" reliance on the report of an evaluating physician, even if the employer had misinterpreted the report); *Dister v. Continental Group, Inc.* (C.A.2, 1988), 859 F.2d 1108, 1116 ("the reasons tendered need not be well-advised, but merely truthful"); *Williams v. Southwestern Bell Tel. Co.* (C.A.5, 1983), 718 F.2d 715, 718 ("[t]he trier of fact is to determine the defendant's intent, not to adjudicate the merits of the facts or suspicions upon which it is predicated"); *Brown*, 55 F.Supp.2d at 795, quoting *Nix v. WLCY Radio/Rahall Communications* (C.A.11, 1984), 738 F.2d 1181, 1187 ("[a]n employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason' ").

Appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that he provided material facts sufficient to withstand appellee's motion for summary judgment on appellant's public-policy tort claim.

█ In order to establish a claim for tortious violation of public policy, appellant must prove the following four elements: (1) a clear public policy manifested in a statute, regulation, or the common law; (2) that discharging an employee under circumstances like those involved would jeopardize the policy; (3) that the discharge at issue was motivated by conduct related to the policy; and (4) that there was no overriding business justification for the discharge. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 151, 677 N.E.2d 308, 321–322.

█ We have already determined that appellant failed to establish grounds for relief under R.C. 4112.02. Appellant does not.identify any other source of "clear public policy" to sustain his wrongful discharge claim. We therefore overrule appellant's second assignment of error.

In his third assignment of error, appellant contends that he provided material facts sufficient to withstand appellee's motion for summary judgment on appellant's claim for intentional infliction of emotional distress. Appellant further argues that the trial court erred in applying the "clear and convincing evidence

standard" to appellant's emotional distress claim. Although appellee urges this court to affirm, it agrees that the trial court applied the wrong legal standard.

■ To establish a claim for intentional infliction of emotional distress, the plaintiff must prove the following four elements by a preponderance of the evidence:

"* * * a) [T]hat the actor either intended to cause emotional distress or knew or should have known that the actions taken would result in serious emotional distress to the plaintiff; b) that the actor's conduct was extreme and outrageous, that it went beyond all possible bounds of decency and that it can be considered as utterly intolerable in a civilized community; c) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and d) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable person could endure it." *Pyle v. Pyle* (1983), 11 Ohio App.3d 31, 11 OBR 63, 463 N.E.2d 98, paragraph two of the syllabus.

■ The trial court erroneously required appellant to establish each element of his claim by clear and convincing evidence. The clear and convincing standard enunciated in R.C. 2745.01 and applied by the trial court in the instant action was declared unconstitutional by the Ohio Supreme Court in *Johnson v. BP Chemicals, Inc.* (1999), 85 Ohio St.3d 298, 308, 707 N.E.2d 1107, 1114–1115. Accordingly, appellant's third assignment of error is sustained insofar as it properly alleges that the trial court applied the wrong legal standard. Appellant's emotional distress claim is remanded in order for the trial court "to conduct a conscientious examination of the record to determine whether summary judgment is appropriate" under the proper legal standard. See *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 360, 604 N.E.2d 138, 141.

For the foregoing reasons, the judgment of the Franklin County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for proceedings consistent with this decision.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

BROWN and McCORMAC, JJ., concur.

JOHN W. McCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.