JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff Deborah Bowers appeals from the order of the trial court that granted summary judgment to defendant Swagelok Co. in plaintiff's action alleging retaliatory termination and other claims. For the reasons set forth below, we affirm.
 {¶ 2} In June 2000, plaintiff was hired by Swagelok to work as a temporary employee. In October 2000, plaintiff accepted full time employment as a production operator at Swagelok's Snow Metal Facility.
 {¶ 3} From October 27, 2001 through January 28, 2002, plaintiff went on medical leave for a kidney-related ailment. Plaintiff was absent from work for three weeks in the spring of 2002 for bronchitis. Plaintiff took a three-week leave of absence pursuant to the Family and Medical Leave Act in September 2002, due to an illness contracted by one of her children.
 {¶ 4} In the latter part of 2002, plaintiff was transferred to Swagelok's main plant in Solon. She was transferred back to the Snow Metal facility in January 2003, but by January 17, 2003, she took a leave of absence for "non-work related" sinus problems.
 {¶ 5} Plaintiff received short-term disability until July 2003, at which time her benefits expired. In a letter dated June 2, 2003, Swagelok advised plaintiff, in relevant part, as follows:
 {¶ 6} "You are about to reach the time when your short-term disability (180 days) will end. After July 15, 2003, Guardian Life Insurance Co. of America will cover your long-term disability.
 {¶ 7} "* * *
 {¶ 8} "In order to establish eligibility, Guardian requires completion of their forms, which are enclosed.
 {¶ 9} "You are eligible to remain on Medical Leave for up to 14 months, if you are unable to return to work, your active employment will be terminated. You will continue to be eligible for the disability benefits if you otherwise meet the qualifications for the disability benefits."
 {¶ 10} Plaintiff failed to submit the required paperwork and Swagelok sent her a reminder letter in September 2003. This letter provided in relevant part as follows:
 {¶ 11} "* * * Guardian requires completion of their forms which are enclosed. * * *
 {¶ 12} "Additionally, your benefits under the Guardian Policy are integrated with any Workmen's Compensation or Social Security Disability Benefits you receive. If you have not applied for Social Security Disability Benefits, you are obligated to do so at this time."
 {¶ 13} Plaintiff subsequently notified Swagelok that she wanted to be transferred to a chemical-free plant and Corporate Benefits Manager David Waltermire conveyed this request to Plant Manager David Halperin who in turn searched for available positions at various plants from March to June or July of 2003.
 {¶ 14} On July 11, 2003, Swagelok advised plaintiff in writing that a position was available at the Pritchard Products facility. Plaintiff accepted this position. Thereafter, an assembly position became available at the Solon facility and plaintiff asked to be considered for this job. The request did not cite to any health reasons, however. By August 2003, Swagelok offered plaintiff the job at the Solon facility and she accepted it. She never actually began this job, however, as she took yet another medical leave beginning on September 11, 2003. This medical leave was extended at twelve-week intervals throughout the remainder of 2003 and the beginning of 2004.
 {¶ 15} By October 2003, plaintiff began to work with other members of her family at a Marathon Gas station.
 {¶ 16} Given the length of plaintiff's active service with Swagelok, she was entitled to a fourteen-month leave of absence pursuant to Swagelok's leave policy. In relevant part, this policy states:
 {¶ 17} "6.4 An associate who is on a Medical Leave of Absence (MLOA) will be terminated from active employment when the disability requiring the MLOA is designated as a permanent disability by the Social Security Administration or when the MLOA extends beyond one year plus one additional month for each year of continuous service with the Swagelok Company whichever occurs first. For purposes of this section, who returns from MLOA and, within 180 calendar days of the return, is placed back on a MLOA * * * will be considered to be on the original MLOA for purposes of calculating the length of time left on the MLOA * * *."
 {¶ 18} On June 11, 2004, plaintiff filed a First Report of Injury with the Bureau of Workers' Compensation, alleging April 14, 2004 as the date of injury.
 {¶ 19} On June 22, 2004, Waltermire advised plaintiff that Swagelok terminated her employment because she exceeded the fourteen-month leave period. Waltermire asserted that he had no knowledge that plaintiff had filed a claim for workers' compensation benefits at the time he sent the termination letter. It is undisputed that plaintiff was working at the gas station more than forty hours per week at this time. She asserted that because she was working, she did not apply for long-term disability benefits.
 {¶ 20} On December 22, 2004, plaintiff filed this action alleging disability discrimination, retaliatory discharge in violation of R.C. 4123.90, and wrongful discharge in violation of public policy. Swagelok moved for summary judgment as to all claims on August 19, 2005. The trial court granted Swagelok's motion and plaintiff now appeals, assigning three errors for our review.
 {¶ 21} Plaintiff's first assignment of error states:
 {¶ 22} "The trial court erred by granting Defendant/Appellee's Motion for Summary Judgment on Plaintiff/Appellant's Claim of workers' compensation retaliation."
 {¶ 23} With regard to procedure, we note that a reviewing court considers the grant of summary judgment de novo using the same standards as the trial court. Nationwide Mut. Fire Ins. Co.v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108,652 N.E.2d 684.
 {¶ 24} A trial court may not grant a motion for summary judgment unless the evidence before the court demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the non-moving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997),77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164, 1171.
 {¶ 25} The burden of showing that no genuine issue exists as to any material fact falls upon the moving party requesting a summary judgment. Id., citing Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66, 375 N.E.2d 46, 47. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. Vahila v. Hall, supra.
 {¶ 26} In responding to a motion for summary judgment, the non-moving party may not rest on "unsupported allegations in the pleadings." Civ.R. 56(E); Harless v. Willis Day WarehousingCo., supra. Rather, Civ.R. 56 requires the nonmoving party to respond with competent evidence that demonstrates the existence of a genuine issue of material fact for trial. Vahila v. Hall,
supra.
 {¶ 27} If the party does not so respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that there is a genuine issue for trial, summary judgment, if appropriate, shall be entered against the nonmoving party.Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031.
 {¶ 28} With regard to the substantive law, we note that R.C.4123.90 expressly prohibits an employer from discharging, demoting, reassigning, or taking any punitive action against an employee because the employee has filed a workers' compensation claim. This statute provides in relevant part:
 {¶ 29} "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. * * *"
 {¶ 30} This statute only protects against termination directly precipitated by the filing of a workers' compensation claim. Metheney v. Sajar Plastics, Inc. (1990),69 Ohio App.3d 428, 590 N.E.2d 1311; Brown v. Lear Operations Corp. (Sept. 30, 1999), Sandusky App. No. S-99-013.
 {¶ 31} An employee sets forth a prima facie case for retaliatory discharge by demonstrating that he or she: (1) was injured on the job; (2) filed a workers' compensation claim; and (3) was discharged in contravention of R.C. 4123.90. Wilson v.Riverside Hosp. (1985), 18 Ohio St.3d 8, 479 N.E.2d 275, syllabus.
 {¶ 32} "If the employee makes a prima facie case, the burden shifts to the employer to set forth a nondiscriminatory reason for the discharge. * * * The burden does not require the employer to prove the absence of a retaliatory discharge. It merely requires the employer to set forth a legitimate, nonretaliatory reason for the employee's discharge. The employer does not have to validate this reason.
 {¶ 33} "Finally, if the employer sets forth a legitimate, nonretaliatory reason, the burden once again shifts to the employee. The employee must then establish that the reason articulated by the employer is pretextual and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act." Herron v. DTJEnters., Summit App. No. 22796, 2006-Ohio-1040, citing Turtonv. York Internatl. (Oct. 4, 2000), Lorain App. No. 00CA007539, and Kilbarger v. Anchor Hocking Glass Co. (1997),120 Ohio App.3d 332, 338, 697 N.E.2d 1080.
 {¶ 34} In determining whether an employer has a legitimate nonretaliatory reason for discharging an employee, the court must keep in mind the fact that an employee who files a workers' compensation claim is not insulated from discharge. Markham v.Earle M. Jorgensen Co. (2000), 138 Ohio App.3d 484,741 N.E.2d 618.
R.C. 4123.90 does not prevent an employer from discharging an employee for just and lawful reasons and does not suspend the rights of an employer. Id. It merely prevents an employer from discharging an employee because the employee pursues a workers' compensation claim. Barker v. Dayton Walther Corp. (1989),56 Ohio App.3d 1, 564 N.E.2d 738.
 {¶ 35} Accordingly, discharge based on the employee's exhaustion of all leave does not violate R.C. 4123.90 absent some credible evidence that such termination was retaliatory in nature. Russell v. Franklin Cty. Auditor (Sept. 28, 1999), Franklin App. No. 98AP-1502. The Russell court stated:
 {¶ 36} "The undisputed facts are that appellant had been off work for over a year at the time of her termination, and she had exhausted all of her accrued leave and leave under the FMLA. As long as it is the position of the employer that it makes no difference to the employer whether the employee chooses to pursue a workers' compensation claim, and the employee will be discharged if he or she is unable to perform the work; the discharge cannot be said to be in retaliation for having pursued a workers' compensation claim. [citing Barker v. Dayton WaltherCorp.] supra, at 3. `To hold otherwise would effectively preserve the status quo of every employee receiving benefits for job-related injuries, regardless of future job performance.' Beav. Revlon Realistic Products Co. (Nov. 27, 1985), Hamilton App. No. C-840926, unreported. Thus, unless the Ohio General Assembly decides to expand the scope of R.C. 4123.90 to prohibit an employer from discharging an employee because the employee is unable to work as a result of a work-related injury, an employer is not prohibited from discharging an employee who has exhausted all her accrued leave and her leave under the FMLA."
 {¶ 37} Accord Oliver v. Wal-Mart Stores, Inc., Franklin App. No. 02 AP-229, 2002-Ohio-5005 (employer was properly awarded summary judgment where it terminated employee due to employee's absence from work for a period of time longer than allowed under defendant's medical leave policy); White v. Mount Carmel Med.Ctr., 150 Ohio App.3d 316, 2002-Ohio-6446, 780 N.E.2d 1054
(employer properly awarded summary judgment where employee was terminated because her absence from the workplace exceeded the time allowed under appellee's medical-leave policy); Vince v.Parma Comm. Gen. Hosp. (Jan. 21, 1988), Cuyahoga App. No. 53180 ("an employer's bona fide leave of absence policy at least rebuts the inference of a retaliatory motive since such a policy on its face concerns only the duration of the employee's absence from employment."); Kane v. Cleveland Metro. General Hosp. (Nov. 14, 1991), Cuyahoga App. No. 59195 (employer entitled to summary judgment where employee was terminated pursuant to neutral leave of absence policy).
 {¶ 38} Applying the foregoing to this matter, we likewise conclude that the employer was properly awarded summary judgment as to the workers' compensation retaliation claim. Plaintiff filed the workers' compensation claim on June 11, 2004 and was terminated later that month. The claim alleges April 14, 2004 as the date of injury, but plaintiff was on leave from Swagelok and had been working with her family at the gas station by this date. Therefore, we merely assume for purposes of argument, but do not explicitly decide that plaintiff has set forth a prima facie case of workers' compensation retaliation.
 {¶ 39} Swagelok presented evidence that it had not received the workers' compensation documentation at the time plaintiff was terminated. Swagelok also presented evidence that plaintiff was terminated pursuant to the leave policy outlined in Section 6.4, after she exhausted the fourteen-month leave period to which she was entitled. Plaintiff presented no evidence that Swagelok's stated reason was pretextual and presented no evidence that the real reason for the discharge was her protected activity under the Ohio Workers' Compensation Act. Accordingly, there were no genuine issues of material fact, and Swagelok was entitled to judgment as a matter of law.
 {¶ 40} This assignment of error is without merit.
 {¶ 41} Plaintiff's second assignment of error states:
 {¶ 42} "The trial court erred by granting Defendant/Appellee's Motion for Summary Judgment on Plaintiff/Appellant's claim of disability discrimination under O.R.C. 4112.02."
 {¶ 43} Pursuant to R.C. 4112.02(A), it is unlawful for an employer to discriminate against an employee due to handicap.
 {¶ 44} R.C. 4112.01(A) (13) defines "disability" as:
 {¶ 45} "(1) a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; (2) a record of a physical or mental impairment; or (3) being regarded as having a physical or mental impairment."Pflanz v. City of Cincinnati, 149 Ohio App.3d 743,2002-Ohio-5492, 778 N.E.2d 1073.
 {¶ 46} To establish a prima facie case of disability discrimination, an employee must demonstrate: (1) that he or she was disabled; (2) that the employer took an adverse employment action against the employee, at least in part, because the employee was disabled; and (3) that the employee could safely and substantially perform the essential functions of the job in question despite his or her disability. Hood v. Diamond Prod.,Inc., 74 Ohio St.3d 298, 1996-Ohio-259, 658 N.E.2d 738. An employee may satisfy the third element of the prima facie case by showing that he could have performed the essential functions of the job with a reasonable accommodation, if necessary. Shaver v.Wolske Blue (2000), 138 Ohio App.3d 653, 663, 742 N.E.2d 164.
 {¶ 47} Once an employee establishes a prima facie case of disability discrimination, "the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken." Hood v. Diamond Prod., Inc., supra. If the employer does so, "then the employee * * * must demonstrate that the employer's stated reason was a pretext for impermissible discrimination." Id.
 {¶ 48} In Crosier v. Quickey Mfg. Co, Inc. (Feb. 28, 2001), Summit App. No. 19863, the Court affirmed summary judgment for the employer where the employee was terminated because her medical leave expired. The Court stated:
 {¶ 49} "Crosier did not return to work at the end of her approved leave and she did not request an extension. Further, Crosier failed to present evidence that the policy has been applied inconsistently or unfairly.
 {¶ 50} "In Ohio it is not unlawful to discharge an employee because the employee is unable to work as a result of a work-related injury. Barker v. Dayton Walther Corp. (1989),56 Ohio App.3d 1, 3, 564 N.E.2d 738. The law does not require employers to wait indefinitely for employees to return to work. Requiring a job to be held open until the employee recovers is not always practicable. While employers are required to make reasonable accommodations for an injured worker, at a certain point, holding a job open becomes unreasonable. Continued performance of the business necessitates that there be a point at which the disabled worker must be replaced.
 {¶ 51} "The public policy of Ohio proscribing discrimination against persons with physical handicaps does not extend so far as to require an employer to continue the employment of a disabled employee who is unable to perform his job duties as a result of a work-related injury."
 {¶ 52} In this matter, the evidence demonstrated plaintiff had taken several leaves, that she requested a transfer to a chemical-free facility, that Swagelok notified her that it found a position for her at the Pritchard facility, that plaintiff then asked to be considered for a position at the Solon facility, and that Swagelok found a position for her at this facility. Plaintiff never actually started employment at the Solon facility, however, as she took a leave of absence before her start date, then exhausted all of the leave to which she was entitled, and was finally terminated. The evidence reveals no genuine issues of material fact. Swagelok was entitled to judgment as a matter of law on the handicap discrimination claim as it provided numerous accommodations for plaintiff but she did not return to work and was eventually terminated simply for exhausting her leave. Cf. Cleveland Civ. Serv. Comm. v. OhioCiv. Rights. Comm. (1991), 57 Ohio St.3d 62, 65, 565 N.E.2d 579
(termination for absenteeism is not discrimination because of "handicap"); cf. Hayes v. Cleveland Pneumatic Co.,92 Ohio App.3d 36, 634 N.E.2d 228 (same).
 {¶ 53} This assignment of error is without merit.
 {¶ 54} Plaintiff's third assignment of error states:
 {¶ 55} "The trial court erred by granting Defendant/Appellee's Motion for Summary Judgment on Plaintiff/Appellant's public policy claim."
 {¶ 56} In order to establish a claim for tortious violation of public policy, appellant must prove the following four elements: (1) a clear public policy manifested in a statute, regulation or the common law; (2) that discharging an employee under circumstances like those involved would jeopardize the policy; (3) that the discharge at issue was motivated by conduct related to the policy; and (4) that there was no overriding business justification for the discharge. Kulch v. StructuralFibers, Inc. (1997), 78 Ohio St.3d 134, 151, 677 N.E.2d 308.
 {¶ 57} Plaintiff asserted that Swagelok violated public policy by terminating her in retaliation for filing a workers' compensation claim and due to her perceived disability. In that the trial court properly determined that Swagelok was entitled to judgment as a matter of law on plaintiff's claims pursuant to R.C. 4123.90 and 4112.02, plaintiff cannot establish that the discharge was motivated by conduct related to the policies behind these statutes and therefore cannot satisfy the second and third requisite elements of this claim for relief. The trial court therefore properly entered judgment for Swagelok on this claim. Accordingly, Swagelok was entitled to judgment as a matter of law on the claim of wrongful discharge in violation of public policy. See Cochran v. Columbia Gas of Ohio, Inc. (2000),138 Ohio App.3d 888, 895, 742 N.E.2d 734. See, also, Ekstrom v. CuyahogaCounty Cmty. College, 150 Ohio App.3d 169, 2002-Ohio-6228,779 N.E.2d 1067; Bennett v. Roadway Express (Aug. 1, 2001), Summit App. No. 20317.
 {¶ 58} This assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sean C. Gallagher, J., and Christine T. McMonagle, J.,concur.