[Cite as *Caldwell v. Niles City Schools*, 2021-Ohio-1543.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| TAMI CALDWELL, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2020-T-0074** |
| NILES CITY SCHOOLS, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas.
Case No. 2019 CV 01004.

Judgment: Reversed and remanded.

*John F. Burke, III*, BurkesLaw, LLC, 55 Public Square, 21st Floor, Cleveland, OH 44113 (For Plaintiff-Appellant).

*Giselle S. Spencer* and *Robert J. McBride, Sr.*, Ennis Britton Co., LPA, 6000 Lombardo Center, Suite 120, Cleveland, OH 44131 (For Defendants-Appellees).


MARY JANE TRAPP, P.J.

{¶1} Plaintiff-appellant, Tami Caldwell ("Ms. Caldwell"), appeals the judgment of the Trumbull County Court of Common Pleas granting summary judgment to defendants-appellees, Niles City Schools (the "district"), Ann Marie Thigpen ("Ms. Thigpen"), and Tracy Parry ("Ms. Parry") (collectively, the "defendants"), on Ms. Caldwell's disability discrimination claims.

{¶2} In her sole assignment of error, Ms. Caldwell contends that the trial court erred by granting summary judgment to the defendants because genuine issues of material fact exist.

{¶3} After a careful review of the record and pertinent law, we find that the record contains sufficient evidence to create genuine issues of material fact as to whether (1) the defendants took an adverse employment action against Ms. Caldwell based on her disability in the form of a constructive discharge, and (2) the defendants made a good faith effort to reasonably accommodate her. Therefore, the trial court erred in granting summary judgment to the defendants.

{¶4} Thus, we reverse the judgment of the Trumbull County Court of Common Pleas and remand for proceedings consistent with this opinion.

**Substantive and Procedural History**

{¶5} The district hired Ms. Caldwell as a limited-contract teacher beginning in the 1999-2000 school year. In the latter part of her employment, Ms. Caldwell worked as a special education teacher at Niles McKinley High School. During the relevant time period, Ms. Thigpen was the superintendent of schools, and Ms. Parry was the high school principal.

{¶6} During her employment, Ms. Caldwell was diagnosed with fibromyalgia, multiple disc issues in her back, plantar fasciitis, chronic ankle tendonitis, back pain, anxiety, and depression. Ms. Caldwell's physical conditions eventually began to affect her ability to work.

### Leaves and Accommodations

{¶7} During the 2016-2017 school year, Ms. Caldwell exhausted her available sick leave by November 2016 and received donated sick leave from fellow teachers. Ms. Caldwell submitted a letter to Ms. Thigpen requesting leave under the Family and Medical Leave Act ("FMLA") for the stated purpose of applying for disability benefits, which the district approved. In February 2017, Ms. Caldwell submitted a letter to Ms. Thigpen requesting a one-year leave of absence for medical reasons to begin March 1, which the district also approved.

{¶8} In late August 2017, Ms. Caldwell submitted a letter to Ms. Thigpen requesting to return to work early for the 2017-2018 school year, attaching a temporary release to work form, which Ms. Thigpen permitted. Upon her return, Ms. Caldwell submitted a letter from Jacob Bair, D.O. ("Dr. Bair") requesting several workplace accommodations, including the use of her personal motorized scooter to travel from classroom to classroom.

{¶9} The district ultimately provided Ms. Caldwell with several of the accommodations, including the use of her motorized scooter in the hallways. According to Ms. Caldwell, however, she continued to have difficulty with mobility and prolonged standing and walking while working in the classroom.

### Meeting on November 3, 2017

{¶10} In late October 2017, the district's then-treasurer, Linda Molinaro ("Ms. Molinaro"), notified Ms. Caldwell via email that she had exhausted all available leave and that it was "imperative that [she] address what [her] future employment will be with the district." According to Ms. Molinaro's email, Ms. Caldwell needed to submit a written

request for unpaid leave to Ms. Thigpen or request sick days from the union's sick leave bank. If Ms. Caldwell's absences continued through October with no future return to work, the district would remove her from its health care effective November 1. If Ms. Caldwell planned to return to work, she needed to provide Ms. Thigpen with "a doctor's excuse showing no restrictions" prior to her return.

{¶11} On November 3, 2017, Ms. Caldwell and the teacher's union president met with Ms. Thigpen to discuss her employment.[1] Ms. Caldwell and Ms. Thigpen dispute the substance of the discussion.

{¶12} Ms. Caldwell testified during her deposition that she told Ms. Thigpen she was spending too much time on her feet even in the classroom. She asked Ms. Thigpen if there were other available options, such a self-contained classroom or a different position. She also asked Ms. Thigpen about using her scooter or a power wheelchair in the classroom because, due to her extreme foot and ankle pain, she needed some type of mobility device to use while teaching in the classroom. Ms. Thigpen rejected the idea, responding that it would "cause a space and safety issue."

{¶13} By contrast, Ms. Thigpen testified during her deposition that there was a brief discussion about a motorized wheelchair, involving how much wider it was than the scooter and whether they would need to rearrange the desks. However, the majority of the conversation involved Ms. Caldwell taking additional leave. Ms. Thigpen denied telling Ms. Caldwell that she could not take the scooter into the classroom or that she could not use the motorized wheelchair.

---

[1]. Ms. Caldwell and Ms. Thigpen dispute whether there were other attendees to the meeting. According to Ms. Caldwell, the additional attendees were Ms. Molinaro and Mary Kay Nicholas, who worked in the district's payroll department. Ms. Thigpen denied that these individuals attended the meeting.

{¶14} Ms. Caldwell submitted a letter to Ms. Thigpen dated the same day requesting an unpaid leave of absence for November and December 2017 "[o]n the recommendation of [her] health care providers" and "in anticipation of [her] STRS disability determination." The letter indicated that medical documentation was included. The district subsequently approved Ms. Caldwell's unpaid leave of absence.

*Doctor Letters*

{¶15} The record contains two letters from Ms. Caldwell's doctors addressing her medical conditions.

{¶16} One letter, from Jeffrey Molinaro, DPM ("Dr. Molinaro"), is dated October 12, 2017, and is addressed to "whom it may concern":

{¶17} "Tami Caldwell who is currently under my care, has an open disability case with your agency. She has attempted to return to work out of financial need. She has been using a mobility scooter to travel from class to class in the school building. Due to the amount of time she is required to stand/walk in the classroom, she has experienced a severe worsening of her plantar fasciitis, chronic ankle tendonitis and increased arthritis pain in her foot which has made mobility, swelling and pain control problematic. Her current foot/ankle issues are also negatively impacting her back problems and chronic pain condition due to difficulty walking and over compensation. Mrs. Caldwell was recently seen with complaints of new pain in the ball area of both feet as well as painfully burning sensation which she describes as 'walking on hot glass'. I have recommended additional testing with diagnosis to follow. I believe Mrs. Caldwell's current podiatric problems are hindering her ability to continue working in her current position. If you need additional information feel free to contact me at [phone number]."

{¶18} A second letter, from Dr. Bair, is dated November 2, 2017 - the day prior to Ms. Caldwell's November 3 meeting with Ms. Thigpen - and is also addressed to "whom it may concern":

{¶19} "Tami Caldwell is a patient of mine with an open disability case. After an extended period off from work due to her chronic health conditions, she attempted to return to work due to financial need. We established a list of accommodations which included the use of a mobility scooter, talk to text software, a chair to sit periodically etc. Due to the time she must spend on her feet in the classroom, she has developed neuromas (as per podiatrist diagnosis) as well as a worsening of her chronic pain conditions. She is currently having limited success at controlling her pain to a level that allows her to continue to work. She is receiving pain management services. It is my recommendation that Tami return to an unpaid leave in anticipation of a disability determination. If you have any questions or concerns, feel free to contract me at [phone number]."

{¶20} Ms. Caldwell testified during her deposition that both letters related to her pending disability claim. She did not remember if they were attached to her November 3 letter requesting unpaid leave.

{¶21} Ms. Thigpen testified during her deposition that she did not recall receiving Dr. Bair's letter during the November 3 meeting. While she had seen Dr. Molinaro's letter prior to her deposition, she did not recall when. She noted that neither letter contained a date stamp from her office, while Ms. Caldwell's November 3 letter did.

### *Ms. Caldwell's Resignation*

{¶22} In late December 2017, Ms. Caldwell was notified that her disability claim was denied. The next day, Ms. Caldwell sent an email to Ms. Thigpen to inform her of the denial, and they had a phone conference.

{¶23} According to Ms. Thigpen, she invited the entire treasurer staff to participate in the call, which included the district's new treasurer, Lori Hudzik ("Ms. Hudzik"). Ms. Thigpen testified during her deposition that it was "a very cordial, nice conversation" relating to payroll, insurance, retirement eligibility, and the status of Ms. Caldwell's leave. Ms. Caldwell also inquired whether she would be permitted to return to work. Ms. Caldwell indicated that she wanted to speak to her financial advisor about paying off her house and then would make a decision.

{¶24} Ms. Caldwell testified in her deposition that she had very little recollection of the conversation because "that's when [her] whole world came crashing down." However, she recalled some discussion about her returning to work and contacting her financial advisor about paying off her house.

{¶25} Ms. Hudzik later submitted an affidavit regarding the phone conversation. According to Ms. Hudzik's affidavit, Ms. Thigpen told Ms. Caldwell that "she must either resign or return to work" and that she would not be allowed to use her scooter in the classroom. Ms. Caldwell indicated that she would have to consider her options and speak with her financial advisor. Following the call, Ms. Thigpen stated, "Yeah, like I am going to let her use a scooter in the classroom."

{¶26} On January 3, 2018, Ms. Caldwell submitted a letter to Ms. Thigpen stating that she resigned her position "effective immediately." Upon Ms. Thigpen's request, Ms.

Caldwell revised the letter to state that her resignation was effective January 1 since her approved unpaid leave had expired on December 31. The letter also stated, "I appreciate the opportunities I have been given at Niles City Schools and appreciate your professional guidance and support. I wish you and the district all the best in the future."

### Charge of Discrimination

{¶27} Ms. Caldwell filed a charge of discrimination with the Ohio Civil Rights Commission alleging that the district engaged in disability discrimination. The commission issued a letter of determination finding no probable cause that the district engaged in an unlawful discrimination practice in violation of R.C. Chapter 4112 and dismissing the matter. Ms. Caldwell applied for reconsideration, which the commission granted. The commission subsequently issued a letter of determination upon reconsideration again finding no probable cause and dismissing the matter.

### The Lawsuit

{¶28} Following the commission's dismissal of her charge, Ms. Caldwell filed a complaint in the Trumbull County Court of Common Pleas naming the district, Ms. Thigpen, and Ms. Parry as defendants.

{¶29} Ms. Caldwell alleged that she was disabled or was regarded or perceived as being disabled by the defendants under Ohio law; she was allowed to use a motorized scooter to travel between classrooms as a reasonable accommodation; and during the November 3 meeting, the defendants denied her request to use a power wheelchair or motorized scooter in the classroom as an additional disability accommodation.

{¶30} In count one, Ms. Caldwell alleged the defendants engaged in disability discrimination in violation of R.C. 4112.02(A) and R.C. 4112.99 by failing to properly

8

engage in the interactive process; failing to provide her with a reasonable accommodation; and using her disability as a basis to take an adverse employment action against her in the form of forced resignation. In count two, Ms. Caldwell alleged that the defendants' actions caused an intolerable work environment and amounted to a constructive discharge.

{¶31} The defendants filed a joint answer denying the material allegations of Ms. Caldwell's complaint, and the parties exchanged written discovery. The defendants took Ms. Caldwell's deposition, and Ms. Caldwell took the depositions of Ms. Thigpen and Ms. Parry.

{¶32} The defendants filed a motion for summary judgment. First, they argued that Ms. Caldwell was unable to establish a prima facie case of disability discrimination under R.C. 4112.02. While they conceded that Ms. Caldwell is disabled, they argued that she cannot show the defendants took an adverse employment action against her because of her disability or that she could safely and substantially perform the essential functions of her job. Second, they argued there was no evidence of a constructive discharge. In support, they cited Ms. Caldwell's deposition transcript and its related exhibits.

{¶33} Ms. Caldwell filed a brief in opposition. She argued that she established both a prima facie claim of disability discrimination and that the defendants failed to properly participate in the interactive accommodation process. In support, she cited her deposition transcript, Ms. Thigpen's deposition transcript and a related exhibit, and Ms. Parry's deposition transcript. Ms. Caldwell also submitted an affidavit from herself and the affidavit from Ms. Hudzik described above.

9

***The Trial Court's Judgment***

{¶34} The trial court subsequently issued a judgment entry granting the defendants' motion for summary judgment.

{¶35} The trial court construed Ms. Caldwell's allegations as involving a "prima facie" disability discrimination claim and a failure-to-accommodate claim, but it found that the analysis for a failure-to-accommodate claim seemed more appropriate in this case.

{¶36} The trial court determined that Ms. Caldwell was unable to show the defendants took an adverse employment action against her because she voluntarily resigned her position and because the denial of one accommodation, i.e., the use of the scooter in the classroom setting, cannot be considered an adverse employment action under these circumstances.

{¶37} The trial court also determined that Ms. Caldwell ultimately terminated the interactive accommodation process when she voluntarily resigned from her position. According to the court, an employee's failure to cooperate in the process precludes an employer's liability for failing to provide reasonable accommodations.

{¶38} Ms. Caldwell appealed and presents the following assignment of error:

{¶39} "The Trial Court erred in granting Niles City School District, Ann Marie Thigpen and Tracie Parry's Motion for Summary Judgment."

**Standard of Review**

{¶40} We review de novo a trial court's order granting summary judgment. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶ 9.

{¶41} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

10

of law. *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 36. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. *Id.*

{¶42} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial'. The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* [75 Ohio St.3d 280, 662 N.E.2d 264 (1996)], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims." *Id.* at ¶ 40.

{¶43} "If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* [38 Ohio St.3d 112, 526 N.E.2d 789 (1988)]." *Id.*

11

{¶44} A "material fact" is one that might affect the outcome of the suit under the governing law. *Turner v. Turner*, 67 Ohio St.3d 337, 340, 617 N.E.2d 1123 (1993). A "genuine issue" exists when the evidence presents a sufficient disagreement to require submission to a jury. *Id.*

{¶45} In determining whether there exists a genuine issue of material fact to be resolved, the court is to consider the evidence and all reasonable inferences to be drawn from that evidence in the light most favorable to the non-movant. *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11. A court "may not weigh the proof or choose among reasonable inferences." *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121, 413 N.E.2d 1187 (1980).

**Disability Discrimination**

{¶46} Ms. Caldwell's complaint alleges that the defendants engaged in disability discrimination under R.C. 4112.02(A) and R.C. 4112.99.

{¶47} R.C. 4112.02(A) provides, in relevant part, that "[i]t shall be an unlawful discriminatory practice * * * [f]or any employer, because of the * * * disability * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.99 provides that "[w]hoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief."

{¶48} This court has held that disability discrimination under R.C. 4112.02(A) may include both an employer's taking an adverse employment action based on an employee's disability and an employer's failure to make a reasonable accommodation.

12

*DeCesare v. Niles City School Dist. Bd. of Edn.*, 154 Ohio App.3d 644, 2003-Ohio-5349, 798 N.E.2d 655, ¶ 21 (11th Dist.).

{¶49} For an adverse-employment-action claim, the person must establish a prima facie case by demonstrating (1) he or she was disabled, (2) the employer took an adverse employment action, at least in part, because the individual was disabled, and (3) the person, though disabled, can safely and substantially perform the essential functions of the job in question. *Hood v. Diamond Prods., Inc.*, 74 Ohio St.3d 298, 658 N.E.2d 738 (1996), paragraph one of the syllabus; *DeCesare* at ¶ 19. An employee may satisfy the third element by showing that he or she could have performed the essential functions of the job with a reasonable accommodation, if necessary. *Bowers v. Swagelok Co.*, 8th Dist. Cuyahoga No. 87192, 2006-Ohio-3605, ¶ 46.

{¶50} Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the action. *Hood* at 302; *DeCesare* at ¶ 20. If the defendant can establish a legitimate, nondiscriminatory reason for the action, the plaintiff must show that the defendant's stated reason was a pretext for impermissible discrimination. *Hood* at 302*; DeCesare* at ¶ 20*.*

{¶51} A failure-to-accommodate claim is based on Ohio Adm.Code 4112-5-08(E)(1), which provides that "[a]n employer must make reasonable accommodation to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business." *See DeCesare* at ¶ 21-22.

{¶52} The plaintiff must demonstrate (1) he or she was disabled, (2) the employer was aware of the disability, and (3) he or she was an otherwise qualified individual with a

13

disability, i.e., he or she satisfied the prerequisites for the position and could perform the essential functions of the job with or without reasonable accommodation. *Id.* at ¶ 23; *Shaver v. Wolske & Blue*, 138 Ohio App.3d 653, 663-664, 742 N.E.2d 164 (10th Dist.2000).

{¶53} In addition, an employee's request for an accommodation triggers an employer's obligation to participate in the interactive process of seeking an accommodation. *DeCesare* at ¶ 24-25; *Shaver* at 664. To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *DeCesare* at ¶ 26.

{¶54} As indicated, the trial court determined that (1) Ms. Caldwell was unable to show that the defendants took an adverse employment action against her, and (2) Ms. Caldwell ultimately terminated the interactive accommodation process when she voluntarily resigned, which precludes the defendants' liability for failing to provide a reasonable accommodation. Our inquiry is whether the record presents genuine issues of material fact regarding these elements.

### Adverse Employment Action

{¶55} The trial court determined that Ms. Caldwell is unable to show the defendants took an adverse employment action against her.

14

**{¶56}** According to the trial court, an adverse employment action involves an employment action that "significantly diminished material responsibilities." In support, the court cited the Sixth District Court of Appeals' decision in *Farris v. Port Clinton City School Dist.*, 6th Dist. Ottawa No. OT-05-041, 2006-Ohio-1864.

**{¶57}** This statement is not applicable to all employment discrimination cases, including the present case. The *Farris* court relied on the Sixth Circuit Court of Appeals' decision in *Kocsis v. Multi-Care Mgt., Inc.*, 97 F.3d 876 (6th Cir.1996), where the court listed "significantly diminished material responsibilities" as one of several examples of a "materially adverse change in the terms or conditions of [an employee's] employment because of her employer's conduct," which is also known as "a 'materially adverse' employment action." *Id.* at 885-886, quoting *Spring v. Sheboygan Area School Dist.*, 865 F.2d 883, 885 (7th Cir.1989).

**{¶58}** The *Farris* court also made this statement in the context of considering "other potential adverse employment actions" after determining "there was no constructive discharge in this case." *Id.* at ¶ 67.

**{¶59}** Ms. Caldwell's claims are not based on an alleged diminishment in responsibilities. Rather, she alleges that she suffered an adverse employment action based on her disability in the form of a constructive discharge. Specifically, Ms. Caldwell alleges she was constructively discharged when the defendants denied her request for an additional accommodation of using a power wheelchair or motorized scooter within the classroom. Ohio courts have held that constructive discharge qualifies as an adverse employment action. *See*, *e.g.*, *Hann v. Perkins Twp.*, 6th Dist. Erie No. E-03-025, 2004-

15

Ohio-3445, ¶ 19; *Hoon v. Superior Tool Co.*, 8th Dist. Cuyahoga No. 79821, 2002 WL 93422, *6 (Jan. 24, 2002).

{¶60} The trial court also appears to have made its adverse-employment-action determination in the context of both types of disability discrimination claims. For example, the trial court stated that "an employer's failure to immediately accommodate a request by a disabled employee is not in and of itself an adverse employment action," citing the Tenth Circuit's decision in *Exby-Stolley v. Bd. of Cty. Commrs.*, 906 F.3d 900, 918 (10th Cir.2018).

{¶61} The panel in *Exby-Stolley* made this statement in the context of a plaintiff's failure-to-accommodate claim after determining that such a claim also requires proof of an adverse employment action. *Id.* at 917. The panel declined to consider whether the plaintiff had established a constructive discharge because she had never asserted such a claim in her complaint. *Id.* at 918.

{¶62} The entire Tenth Circuit, sitting en banc, subsequently vacated the panel's decision and rejected its underlying legal conclusion, holding that "an adverse employment action is not a requisite element of an ADA failure-to-accommodate claim." *See Exby-Stolley v. Bd. of Cty. Commrs.*, 979 F.3d 784, 788 (10th Cir.2020).

{¶63} Similarly, this court in *DeCesare* held that an adverse employment action is not required to establish a failure-to-accommodate claim under R.C. Chapter 4112. *See id.* at ¶ 21. Therefore, the trial court's adverse-employment-action determination cannot preclude Ms. Caldwell's failure-to-accommodate claim.

16

### Constructive Discharge

{¶64} The Supreme Court of Ohio has held that "[t]he test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Services*, Inc., 75 Ohio St.3d 578, 664 N.E.2d 1272 (1996), paragraph four of the syllabus. In the context of disability discrimination, a "claim of constructive discharge is premised upon a finding that [the employee's] working conditions were made intolerable, and it was foreseeable she would resign when she was denied a reasonable accommodation." *Tally v. Family Dollar Stores Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir.2008).

{¶65} The Sixth Circuit has held that "[a] constructive discharge claim 'depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.'" *Id.*, quoting *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir.2004). While an employee may not "assert a claim for constructive discharge every time an employer fails to accommodate her disability[,]* * * when an employee makes a repeated request for an accommodation and that request is both denied and no other reasonable alternative is offered, a jury may conclude that the employee's resignation was both intended and foreseeable." *Id.* at 1109.

{¶66} The trial court found that Ms. Caldwell "voluntarily resigned her position." According to the trial court, Ms. Caldwell "made one request for an accommodation of the scooter in the classroom" during the November 3 meeting "before taking her leave of absence, and eventually resigning." The court also stated that "the denial of one

17

accommodation under these circumstances cannot be considered an adverse employment action."

{¶67} The evidentiary record does not compel these findings.

{¶68} For instance, Ms. Molinaro, the district's then-treasurer, notified Ms. Caldwell via email in October 2017 that the district would remove her from its health care, effective November 1, unless she submitted a written request for *unpaid* leave; requested sick days from the union's sick leave bank; or, if she planned to return to work, providing a "a doctor's excuse *showing no restrictions*" prior to her return. (Emphasis added.)

{¶69} Ms. Caldwell testified that during the November 3 meeting, she asked Ms. Thigpen if there were other available options for her to continue to work, such a self-contained classroom, a different position, or whether she could use her scooter or a power wheelchair in the classroom. Ms. Thigpen allegedly rejected these options.

{¶70} In addition, Ms. Hudzik averred that during the January 2018 phone conversation, Ms. Thigpen told Ms. Caldwell that "she must either resign or return to work" and that she would not be allowed to use her scooter in the classroom.

{¶71} Thus, there is evidence in the record suggesting that Ms. Caldwell made more than one request to use her scooter in the classroom as an additional accommodation; that the defendants denied these requests; and that the defendants made no alternative accommodation that would allow her to continue working. One could reasonably infer that the defendants' denial of the additional accommodation made Ms. Caldwell's working conditions intolerable to a person with her physical disabilities and that Ms. Caldwell was compelled to resign as a result.

18

{¶72} The trial court also found that at the time Ms. Caldwell made her request for an additional accommodation, her doctors "had already opined that she could not continue to work, rendering the November leave immediately necessary." This suggests that Ms. Caldwell's resignation was motivated by her doctors' opinions rather than the defendants' actions.

{¶73} The evidentiary record also does not compel this finding.

{¶74} Both doctors' letters are dated before the November 3 meeting. Dr. Molinaro's letter acknowledged Ms. Caldwell's prior use of "a mobility scooter to travel from class to class in the school building." However, he wrote that Ms. Caldwell's conditions were worsening "[d]ue to the amount of time she is required to stand/walk in the classroom."

{¶75} Similarly, Dr. Bair wrote that Ms. Caldwell had developed "neuromas" and "a worsening of her chronic pain conditions," which were "[d]ue to the time she must spend on her feet in the classroom."

{¶76} Thus, neither doctor opined that Ms. Caldwell would remain unable to work if the defendants had granted her request for an additional accommodation.

{¶77} Further, Ms. Caldwell testified that she took unpaid leave after the November 3 meeting because she was "out of options" following the defendants' denial of her request. She ultimately resigned because her unpaid leave had expired, and her working conditions had not changed.

{¶78} Accordingly, the record contains evidence presenting a genuine issue of material fact as to whether the defendants took an adverse employment action against Ms. Caldwell based on her disability in the form of a constructive discharge.

### *Interactive Process*

**{¶79}** The trial court also determined that the defendants could not be liable for failing to provide a reasonable accommodation because Ms. Caldwell terminated the interactive accommodation process by voluntarily resigning.

**{¶80}** As indicated, an employee's request for an accommodation triggers an employer's obligation to participate in the interactive process of seeking an accommodation. *DeCesare* at ¶ 24-25; *Shaver* at 664. To show that an employer failed to participate in the interactive process, a disabled employee must demonstrate, among other things, that the employer did not make a good faith effort to assist the employee in seeking accommodations. *DeCesare* at ¶ 26.

**{¶81}** The Sixth Circuit has held that an employee who quits before the accommodation request's resolution is at fault for any breakdown in the interactive process, not the employer. *McDonald v. UAW-GM Ctr. for Human Resources*, 738 Fed.Appx. 848, 855 (6th Cir.2018).

**{¶82}** As demonstrated above, there is a genuine issue of material fact as to whether Ms. Caldwell voluntarily resigned or was constructively discharged. Thus, there is necessarily a genuine issue of material fact as to whether Ms. Caldwell terminated the interactive process by voluntarily resigning.

**{¶83}** Accordingly, the record contains evidence presenting a genuine issue of material fact as to whether the defendants made a good faith effort to assist Ms. Caldwell in seeking an additional accommodation.

20

{¶84} In sum, we find that the trial court erred in granting summary judgment to the defendants. In doing so, we express no views about the ultimate merits of Ms. Caldwell's disability discrimination claims.

{¶85} Ms. Caldwell's sole assignment of error has merit.

{¶86} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is reversed, and this matter is remanded for further proceedings consistent with this opinion.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.