[Cite as *Coomer v. Opportunities for Ohioans with Disabilities*, 2022-Ohio-387.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Laura Coomer, | : | |
| Plaintiff-Appellee, | : | No. 21AP-158 (Ct. of Cl. No. 2019-00086JD) |
| v. | : | (REGULAR CALENDAR) |
| Opportunities for Ohioans with Disabilities, | : | |
| Defendant-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on February 10, 2022

**On brief:** *Mansell Law, LLC, Gregory R. Mansell,* and *Carrie J. Dyer*, for appellee. **Argued:** *Carrie J. Dyer.*

**On brief:** *Dave Yost*, Attorney General, *Timothy M. Miller,* and *Samantha J. Scherger*, for appellant. **Argued:** *Timothy M. Miller.*

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, P.J.

{¶ 1} Defendant-appellant, Opportunities for Ohioans with Disabilities ("OOD"), appeals from a judgment of the Court of Claims of Ohio finding in favor of plaintiff-appellee, Laura Coomer, as to her failure to accommodate and disability discrimination claims against OOD. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} In January 2019, Coomer initiated this matter against OOD, asserting failure to accommodate and disability discrimination claims under R.C. Chapter 4112. In May 2020, and with leave of court, Coomer amended her complaint to allege OOD's failure to accommodate and disability discrimination were also violations of the Americans with

Disabilities Act of 1990, 42 U.S.C. 12101, et seq. ("ADA"). In January 2020, OOD moved for summary judgment. The next month, the trial court denied OOD's summary judgment motion, and the matter proceeded to a bench trial in October 2020. As pertinent to this appeal, the following evidence was adduced at trial.

{¶ 3} Coomer has received treatment for mental health conditions, including generalized anxiety disorder, for many years. She began to work for OOD in 2009 as a disability claims adjudicator. In the beginning of 2017, Coomer's work schedule was 7:00 a.m. to 3:30 p.m., five days per week, but she requested to change her daily schedule to 8:00 a.m. to 4:30 p.m. in August 2017 due to childcare issues. This request was granted. Initially this revised schedule was "going okay," but Coomer developed more anxiety in the afternoons and was unable to concentrate. (Tr. Vol. 1 at 53.) She had heart palpitations and racing thoughts and needed to take Family and Medical Leave Act ("FMLA") leave intermittently. Coomer explained that her anxiety "continued to snowball" in the afternoon, making it increasingly difficult to work. (Tr. Vol. 1 at 87.) In February 2018, Coomer asked her immediate supervisor, Paul Spencer, if she could return to her previous schedule of 7:00 a.m. to 3:30 p.m. Spencer approved the change, but the manager, Heather Graham, disapproved because of Coomer's performance issues.

{¶ 4} In March 2018, Coomer requested the modified schedule as a reasonable accommodation for her anxiety disorder, and she submitted a note from her treating nurse practitioner in support. Coomer then met with James Clinkscale, OOD's ADA coordinator, who indicated that he needed more information regarding the accommodation request. Clinkscale provided Coomer with a form to be completed by her physician for this purpose. Coomer's treating physician, psychiatrist Dr. Michael Saribalas, completed the form and sent it directly to Clinkscale. On the form, Dr. Saribalas recommended the earlier work schedule for Coomer as an accommodation for her disability. Coomer signed the form to authorize Clinkscale to contact Dr. Saribalas if he needed additional information.

{¶ 5} Clinkscale informed Coomer that the request would be denied, stating in part that "the medical information you provided did not sufficiently substantiate your need to leave the office at any particular time." (Joint Ex. 7.) Coomer appealed the denial to Janine Ashanin, OOD's deputy human resources director, who also denied the request. Coomer stopped working near the end of May 2018, and she was approved for short-term disability

leave benefits with the Ohio Department of Administrative Services ("DAS"). She then was approved for disability with the Ohio Public Employees Retirement System ("OPERS"). Even so, Coomer testified that, if given the opportunity to work 7:00 a.m. to 3:30 p.m., she could perform the duties of an OOD disability claims adjudicator.

{¶ 6} Spencer testified that the "core hours" of work at OOD are 8:00 a.m. to 5:00 p.m., and full-time employees, like Coomer had been, must work 40 hours per week. (Tr. Vol. 1 at 140.) However, OOD management has discretion to permit work schedules to begin at 7:00 a.m. or end at 6:00 p.m., and some disability claims adjudicators work a 7:00 a.m. to 3:30 p.m. daily schedule. When Coomer requested her schedule change to 7:00 a.m. to 3:30 p.m. (and was working 8:00 a.m. to 4:30 p.m.), she was having work performance issues due to "too many overdue [case] actions." (Tr. Vol. 1 at 147.) Spencer's supervisor, Graham, testified that she denied Coomer's schedule change request because Coomer was not meeting the timeliness expectations.

{¶ 7} Clinkscale testified that he determined that Coomer's medical condition qualified her for ADA coverage. But he did not believe a schedule change was justified based on Coomer's note from her treating nurse practitioner, and he therefore provided Coomer with OOD's reasonable accommodation form with instructions to have her medical provider complete that form. He soon received the completed form from Dr. Saribalas, who also indicated his recommendation that Coomer's schedule be modified as requested. After reviewing the completed form, Clinkscale did not contact Coomer's medical providers for more detailed information; instead, he sought an explanation from Coomer as to the cause of her afternoon heightened anxiety. Coomer was unable to sufficiently explain that causation. Clinkscale proposed Coomer listen to music or change when she took her lunch break. Coomer rejected those proposals and terminated the discussion. Based on Clinkscale's review of Coomer's submissions, and his discussions with her, he decided not to approve the accommodation. From his perspective, the information Coomer provided, including the medical documentation, "did not sufficiently substantiate" her need to leave at 3:30 p.m., as requested. (Tr. Vol. 1 at 207.) Clinkscale conceded the requested accommodation would not have been burdensome for OOD to provide.

{¶ 8} Psychiatric nurse practitioner Karen Clum testified that she treats Coomer for mental health issues, including her anxiety disorder. She explained that "there's often

a pattern with peak anxiety" and it is "common for individuals to have peak anxiety at different times per day." (Tr. Vol. 2 at 284-85.) Coomer reported to Clum that her anxiety increased later in the day, and her later schedule resulted in her experiencing higher anxiety. Thus, Clum concluded that permitting Coomer to structure her workday so she could leave at 3:30 p.m., instead of 4:30 p.m., would result in lower anxiety peaks.

{¶ 9} Dr. Saribalas testified that he has treated Coomer for her mental illness since 2009. Coomer reported to him that she has heightened anxiety late afternoon, experiences an elevated heart rate and a sense of impending doom with the anxiety, and it impacts her productivity because her thinking is scattered and unfocused. Dr. Saribalas explained that it is common for individuals with anxiety disorder to have their anxiety peak at a certain time of day. He also explained that because anxiety is subjective, his treatment and recommendations are necessarily based on a patient's self-reporting. He opined that, based on his professional training and experience, his evaluations of Coomer, and her reported symptoms, Coomer's condition prevented her from performing the duties of her employment at OOD without the requested accommodation.

{¶ 10} On February 1, 2021, the trial court issued a decision finding in Coomer's favor as to her failure to accommodate and disability discrimination claims against OOD. The trial court found that Coomer proved that OOD failed to provide a reasonable accommodation to Coomer's disability and that such an accommodation would not cause an undue hardship on OOD. The trial court also found Coomer proved her disability discrimination claim based on her constructive discharge from employment. Consequently, the trial court awarded Coomer backpay, lost benefits, and emotional distress damages, and it ordered Coomer's reinstatement conditioned on medical evidence that she is no longer disabled and can work the schedule ordered, 7:00 a.m. to 3:30 p.m., in accordance with R.C. 145.362. The trial court deferred a ruling on the amount of attorney fees to which Coomer would be entitled. In March 2021, the trial court entered final judgment, incorporating its prior rulings and awarding Coomer attorney fees.

{¶ 11} OOD timely appeals.

## II.  Assignments of Error

{¶ 12}  OOD assigns the following errors for our review:

[1.] The trial court erred, as a matter of law, when it found that OOD failed to accommodate Coomer's disability because it failed to analyze which party was responsible for the breakdown in the interactive process.

[2.] The trial court erred, as a matter of law, in finding that OOD constructively discharged Coomer.

[3.] The trial court erred, as a matter of law, by awarding Coomer backpay and employment benefits because OPERS had determined she was permanently incapable of working.

[4.] The trial court's holdings of liability and award of back pay and benefits are not supported by the manifest weight of the evidence.

## III.  Discussion

### A.  Standard of Review

{¶ 13}  OOD's assignments of error allege certain trial court factual findings were against the manifest weight of the evidence and the trial court did not properly apply the pertinent law.  In a civil case, a reviewing court will not reverse the judgment as being against the manifest weight of the evidence when some competent, credible evidence supports all the essential elements of the case.  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).  In determining whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trial court are correct.  *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).  "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."  *Id.*  Questions of law, however, are reviewed de novo.  *Ohio Democratic Party v. LaRose*, 10th Dist. 20AP-432, 2020-Ohio-4778, ¶ 18 (10th Dist.).

### B. First Assignment of Error – Failure to Accommodate and Interactive Process

{¶ 14} OOD's first assignment of error alleges the trial court erred as a matter of law in finding OOD failed to accommodate Coomer's disability because it did not analyze which party was responsible for the interactive process breakdown concerning her request for an accommodation. This assignment of error is not well-taken.

{¶ 15} Coomer alleged she was the victim of OOD's unlawful discrimination based on her disability. The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. 12112(a). Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. 12102(1)(A) through (C). "Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. 12102(2)(A). Ohio law also provides that it is an unlawful discriminatory practice "[f]or any employer, because of the * * * disability * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(A). For the purpose of this statute, "disability" is "a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment." R.C. 4112.01(A)(13). Because of the similarity in statutory language, Ohio courts look to federal case law as guidance when reviewing state employment discrimination claims. *Coryell v. Bank One Trust Co. N.A.*, 101 Ohio St.3d 175, 2004-Ohio-723, ¶ 15; *see Chiancone v. Akron*, 9th Dist. No. 26596, 2014-Ohio-1500, ¶ 16 ("The Supreme Court of Ohio has consistently held that a court considering a disability discrimination claim pursuant to R.C. 4112.02 may look to case law interpreting the Americans with Disabilities Act for guidance.").

{¶ 16} Coomer alleged OOD discriminated against her by failing to make a reasonable accommodation for her disability. Under federal law, discrimination on the basis of disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. 12112(b)(5)(A). Similarly, Ohio Adm.Code 4112-5-08(E)(1) states: "An employer must make reasonable accommodation to the disability of an employee * * * unless the employer can demonstrate that such an accommodation would impose an undue hardship on the conduct of the employer's business." *See DeCesare v. Niles City School Dist. Bd. of Edn.*, 154 Ohio App.3d 644, 2003-Ohio-5349, ¶ 21 (11th Dist.) ("Ohio Administrative Code places a duty on employers to make reasonable accommodations."). "Accommodations may take the form, for example, of providing access to the job, job restructuring, acquisition or modification of equipment or devices or a combination of any of these. Job restructuring may consist, among other things, of realignment of duties, revision of job descriptions or modified and part-time work schedules." Ohio Adm.Code 4112-5-08(E)(2).

{¶ 17} To establish a prima facie claim of failure to accommodate, the plaintiff must show that: (1) she is disabled; (2) she is otherwise qualified for the position (with or without reasonable accommodation); (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir.2004). The reasonableness of a requested accommodation is generally a question of fact. *Keith v. Cty. of Oakland*, 703 F.3d 918, 927 (6th Cir.2013). The plaintiff bears the burden of proposing an accommodation that seems reasonable on its face. *Fisher v. Nissan N. Am.*, 951 F.3d 409, 419 (6th Cir.2020). Once the plaintiff has presented a prima facie case, the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated because the accommodation would impose an undue hardship on the employer. *DiCarlo* at 419.

{¶ 18} Here, the trial court found Coomer proved her claim that OOD failed to accommodate her disability. OOD argues that the trial court erred, as part of its failure to accommodate analysis, in not determining the party responsible for the breakdown in the

reasonable accommodation interactive process. According to OOD, the undisputed evidence demonstrated that Coomer was at fault in causing a breakdown in the reasonable accommodation interactive process, and therefore her failure to accommodate claim fails as a matter of law. In support, OOD asserts that, after it denied Coomer's schedule change request, it was willing to discuss possible alternative accommodations and to consider additional evidence supporting Coomer's schedule change request. We are unpersuaded.

{¶ 19} Pursuant to 29 C.F.R. 1630.2(o)(3), "To determine the appropriate reasonable accommodation [for a disabled employee] it may be necessary for the [employer] to initiate an informal, interactive process with [that employee]. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." An employee who quits before the accommodation request's resolution is at fault for any breakdown in the interactive process, not the employer. *Caldwell v. Niles City Schools*, 11th Dist. No. 2020-T-0074, 2021-Ohio-1543, ¶ 81, citing *McDonald v. UAW-GM Ctr. for Human Resources*, 738 Fed.Appx. 848, 855 (6th Cir.2018). Here, OOD suggests that further discussion between Coomer and OOD's ADA coordinator Clinkscale was necessary for Coomer to adequately substantiate the need for the requested accommodation or likely would lead to the development of an alternative accommodation for her disability. But the trial court found the evidence demonstrated Coomer's mental illness prevented her from working past 3:30 p.m. Thus, based on this finding, Coomer requested a necessary accommodation, and further discussions between Coomer and OOD concerning the request reasonably could be viewed as either unnecessary or futile after the denial. Furthermore, the trial court's conclusion that OOD failed to provide a reasonable accommodation reflected its implicit rejection of any contention that Coomer was at fault in the interactive process. Therefore, we reject OOD's contention the trial court erred as a matter of law in not analyzing which party caused a breakdown in the interactive process concerning Coomer's accommodation request.

{¶ 20} Accordingly, OOD's first assignment of error is overruled.

## C. Second Assignment of Error – Constructive Discharge Standard

{¶ 21} OOD's second assignment of error alleges the trial court erred as a matter of law in finding OOD constructively discharged Coomer based on OOD's denial of Coomer's

accommodation request. OOD argues the trial court did not apply the correct standard to determine whether a constructive discharge occurred, and that application of the correct standard mandated a no constructive discharge finding. We are unpersuaded.

{¶ 22} "The test for determining whether an employee was constructively discharged is whether the employer's actions made working conditions so intolerable that a reasonable person under the circumstances would have felt compelled to resign." *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578 (1996), paragraph four of the syllabus. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1107 (6th Cir.2008) (Constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."). A constructive discharge claim "depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee." *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir.2004).

{¶ 23} Citing *Talley*, OOD asserts that, to prove constructive discharge based on a failure to accommodate, Coomer needed to demonstrate OOD "complete[ly] fail[ed]" to engage in the interactive process. OOD reasons that because the trial court did not make this finding, it applied the wrong standard and erred in finding constructive discharge. We disagree. In *Talley*, the Sixth Circuit Court of Appeals emphasized that not every failure to accommodate results in a constructive discharge but also noted that "a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." *Talley* at 1109. The court further explained that "when an employee makes a repeated request for an accommodation and that request is both denied and no other reasonable alternative is offered, a jury may conclude that the employee's resignation was both intended and foreseeable." *Id.* Unlike OOD, however, we do not construe *Talley* as holding that for a plaintiff to demonstrate constructive discharge based on a failure to accommodate, the plaintiff must show the employer completely failed to engage in the interactive process. The focus of the quoted language is on the employer's "complete failure to accommodate," not the extent it engaged in the interactive process. And *Talley* did not deviate from the principle that the merits of a constructive discharge claim depend on the particular facts of the case. Simply stated, the *Talley* court did not establish the bright-line rule that OOD posits.

{¶ 24} Because we reject OOD's argument that the trial court erred as a matter of law in applying the wrong standard to Coomer's constructive discharge disability discrimination claim, we overrule OOD's second assignment of error.

### D. Third Assignment of Error – Receipt of OPERS Benefits

{¶ 25} OOD's third assignment of error alleges the trial court erred as a matter of law in awarding Coomer backpay and benefits because OPERS determined she was permanently incapable of working. This assignment of error lacks merit.

{¶ 26} Soon after Coomer resigned from employment, OPERS approved her application for disability retirement benefits. In support of Coomer's OPERS disability application, Dr. Saribalas indicated his finding that Coomer was permanently disabled from her last public employment position primarily due to her mood disorder, but also due to her depression, anxiety, and insomnia. Based on this finding and OPERS' decision to award disability retirement benefits, OOD asserts that Coomer's physician and OPERS determined Coomer was medically incapable of working at OOD, regardless of whether she was given the requested accommodation. OOD therefore argues the trial court erred in awarding backpay and benefits for a time-period when OPERS declared Coomer medically incapable of working in any capacity. But OOD's argument mischaracterizes Dr. Saribalas's finding and OPERS' disability determination.

{¶ 27} Under R.C. 145.35(E), for a public employee to receive a "disability benefit," the member must be "incapacitated for duty," which means "the member is mentally or physically incapable of performing the duties of the most recent public position held by the member." Ohio Adm.Code 145-2-21(A)(1) defines "disability" as "a presumed permanent mental or physical incapacity for the performance of the member's present or most recent public duty that is the result of a disabling condition that has occurred or has increased since an individual became a member." These definitions do not include language addressing whether the employee could perform the duties of her former position of employment if accommodated. Thus, by granting disability benefits based on this standard, OPERS did not determine that Coomer was incapable of performing the duties of her former position of employment if OOD had given Coomer the requested accommodation. And Dr. Saribalas's opinion submitted in support of Coomer's OPERS

disability benefits application did not address the impact of any accommodation. Thus, the underlying premise of OOD's argument concerning this issue is not reflected in the record.

{¶ 28} Accordingly, we overrule OOD's third assignment of error.

### E.  Fourth Assignment of Error – Manifest Weight of the Evidence

{¶ 29} In its fourth assignment of error, OOD argues the trial court's liability findings and backpay and benefits awards were against the manifest weight of the evidence because the trial court made two erroneous factual findings that formed the basis of its decision.  First, OOD asserts the evidence did not support the trial court's finding that Coomer's medical providers "unequivocally concluded that she cannot work past 3:30 p.m." (Feb. 1, 2021 Interim Decision at 9.)  Second, OOD asserts the trial court erred in finding Coomer could work 40 hours per week as a full-time disability claims adjudicator if her schedule was changed to 7:00 a.m. to 3:30 p.m.  Contrary to OOD's assertions, these findings were supported by competent, credible evidence and therefore the trial court's liability findings and awards were not against the manifest weight of the evidence.

{¶ 30} Coomer's treating medical providers, Clum and Dr. Saribalas, both testified that Coomer's disability necessitated her leaving work at 3:30 p.m., and no expert refuted their opinions.  OOD argues that evidence of variation in the intensity of Coomer's anxiety, including her ability to work some days after 3:30 p.m., undermined this testimony and the trial court's finding that she could not work after 3:30 p.m.  OOD is correct that Coomer testified that there were days she worked after 3:30 p.m., and that some days her anxiety was more manageable, but she also testified that her anxiety typically would escalate, or "snowball," in the afternoon and peak after 3:30 p.m.  Consistent with this, Dr. Saribalas testified that it is common for persons with anxiety disorder to have anxiety peaks at certain times of day.  Additionally, the trial court did not find the schedule change was necessary because Coomer could never work past 3:30 p.m.; instead, when the above-quoted language from the trial court's decision is read in context, it reflects the trial court's finding that Coomer's treating medical providers indicated, without any reservation, that Coomer's daily schedule should conclude at 3:30 p.m. based on her disability.  The fact that Coomer may have worked after 3:30 p.m. some days did not require the trial court to discredit her providers' recommendation that OOD not schedule her for shifts that ended after 3:30 p.m. based on her disability.

{¶ 31} OOD also challenges the authority of Clum and Dr. Saribalas's opinions by arguing that their findings were solely based on Coomer's self-reporting of her symptoms. Concerning this issue, Dr. Saribalas explained that because anxiety issues are subjective, his professional treatment and recommendations concerning the condition necessarily rely in part on patient self-reporting. Additionally, courts also recognize that because the diagnosis of mental disorders commonly depends on self-reporting of symptoms, it would be improper to reject the opinions of treating medical providers regarding mental disorders solely because those opinions were based at least in part on patient self-reporting of symptoms. *See Lutz v. Commr. of Social Sec.*, S.D.Ohio No. 2:14-cv-725, 2015 U.S. Dist. LEXIS 122829 (Sept. 15, 2015) (diagnosis of mental disorders are commonly dependent on a patient's self-reporting); *Aurand v. Colvin*, 654 F.Appx. 831, 837 (7th Cir.2016) (because "a psychological assessment is by necessity based on the patient's report of symptoms and responses to questioning," it would be "illogical to dismiss the professional opinion of an examining psychiatrist or psychologist simply because that opinion draws from the claimant's reported symptoms"). Consequently, we reject OOD's contention that the medical providers' schedule recommendation was fundamentally flawed because it was based on Coomer's self-reporting.

{¶ 32} Therefore, we find competent, credible evidence supported the trial court's finding that Coomer's anxiety disorder required her daily work schedule to conclude at 3:30 p.m.

{¶ 33} In support of its argument that the record contradicts the trial court's finding that Coomer could perform her full-time job, if she was given the accommodation, OOD cites Clum's testimony regarding her completion of the application for Coomer to receive short-term disability leave benefits from DAS, the fact that Coomer's medical providers' recommendations were based on her self-reporting, and Coomer often left work before 3:30 p.m. when she worked the 7:00 a.m. to 3:30 p.m. schedule. We are unpersuaded.

{¶ 34} Under DAS rules, a "full-time permanent employee * * * may file an application for disability leave benefits with the employee's appointing authority" if the "employee is medically or mentally incapable of performing the duties of their position." Ohio Adm.Code 123:1-33-01 and 123:1-33-02. In support of her request for disability leave benefits under these rules, Coomer submitted a statement from Clum, who indicated her

finding that, as of May 25, 2018, Coomer was "disabled and unable to return to work." (Joint Ex. 13.) At trial, Clum explained that she completed this form because Coomer could not return to work at that time. Clum further explained that Coomer's anxiety problems were getting worse leading up to the time she quit. Clum stated she was unsure whether she would have completed the DAS disability leave benefits request form had OOD granted Coomer's accommodation request. Clum also testified, however, that she recommended the earlier shift in March 2018 because she believed it would better accommodate Coomer's anxiety disorder. Clum noted that Coomer had better success in dealing with her anxiety when she completed her shift at 3:30 p.m., and she opined that Coomer probably could have retained her position had the accommodation request been granted. Further, in a January 2020 affidavit that was admitted into evidence, Clum averred that "Ms. Coomer would have been able to perform her job duties as a Disability Claims Adjudicator, had she been granted the request to adjust her schedule so that she could leave one hour earlier." (Pl.'s Ex. 16 at ¶ 13.) Even if Clum's opinion on this issue is not considered, Dr. Saribalas's opinion on this issue aligned with Coomer's testimony that she could perform her job with the requested accommodation. And for the reasons discussed above, we are unpersuaded by OOD's arguments concerning the reliance of Coomer's medical providers on Coomer's self-reporting. Furthermore, evidence that Coomer often used leave time to stop working before the end of her shift, even when working the 7:00 a.m. to 3:30 p.m. schedule, did not mandate a finding that she could not perform the duties of her job. In fact, other evidence demonstrated that concerns regarding the timeliness of her completion of work only developed after her shift was changed to 8:00 a.m. to 4:30 p.m.

{¶ 35} For these reasons, we conclude the trial court's finding that if Coomer was allowed to work the modified schedule, she could perform her job as an OOD disability claims adjudicator was supported by competent, credible evidence.

{¶ 36} In the final analysis, the weight of the evidence supported the trial court's determinations that OOD failed to accommodate Coomer's disability and constructively discharged her from employment based on that disability. Despite Coomer repeatedly seeking an accommodation based on her disability, and the information provided in support being reasonable on its face, unrefuted, and sufficient for its purpose, OOD rejected the request as inadequate. This response reasonably could be viewed as a complete failure

to accommodate, with Coomer deciding to resign being a foreseeable consequence of OOD's denial of Coomer's request.  *See Morrissey v. Laurel Health Care Co.*, 946 F.3d 292 (6th Cir.2019) (finding that reasonable juror could find constructive discharge when employee quit after employer required her to work beyond a 12-hour workday, which was necessitated by her physical disability as indicated by her healthcare providers, despite her repeated request for that accommodation).  Further, not only did OOD concede the accommodation would not have unduly burdened it, the evidence reasonably indicated it would have benefitted OOD because Coomer had been more efficient under the earlier work schedule.

{¶ 37}  Because the trial court's decision was not against the manifest weight of the evidence, we overrule OOD's fourth assignment of error.

**IV.  Disposition**

{¶ 38}  Having overruled all four of OOD's assignments of error, we affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN and JAMISON, JJ., concur.

—————————————