[Cite as *Cole v. Fifth Third Bancorp*, 2022-Ohio-774.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| BENJAMIN COLE | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | Hon. Craig R. Baldwin, J. |
| -vs- | Case No. 21 CAE 05 0025 |
| FIFTH THIRD BANCORP | |
| Defendant-Appellee | O P I N I O N |

CHARACTER OF PROCEEDINGS: Appeal from the Delaware County Court of Common Pleas, Case No. 19 CV H 10 0571

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 15, 2022

APPEARANCES:

For Plaintiff-Appellant

MICHAEL W. DEWITT
4200 Regent Street – Suite #200
Columbus, Ohio 43219

For Defendant-Appellee

GRETCHEN M. TREHERNE
SCOTT A. CARROLL
Jackson Lewis P.C.
201 E. Fifth Street
Cincinnati, Ohio 45202

*Hoffman, J.*

{¶1} Plaintiff-appellant Benjamin Cole appeals the summary judgment entered by the Delaware County Common Pleas Court dismissing his complaint for disability discrimination and retaliation against Defendant-appellee Fifth Third Bancorp.

STATEMENT OF THE FACTS AND CASE

{¶2} Appellant began working for Appellee as a personal banker in September of 2017. Appellant avers he informed his financial center manager and retail market manager he suffered from post-traumatic stress disorder and anxiety. After working at several of Appellee's branches, Appellant was assigned to the Polaris branch in March, 2018. In February of 2019, a new manager, Linzie Carlisle, was assigned to the Polaris branch. John Dunn was the regional manager who oversaw numerous bank branches, including Polaris.

{¶3} One of Appellant's duties as a personal banker was to periodically contact bank customers assigned to him to discuss their financial goals and needs, and to review products or services offered by Appellee which could benefit his customers. When a personal banker contacted customers, the contact was to be recorded in a call log on the personal banker's computer.

{¶4} Ms. Carlisle began to have concerns about the number of calls Appellant was recording on his call log compared to the amount of time he spent at his desk making calls. After observing Appellant more closely, Carlisle contacted Dunn about her concerns. Dunn advised Carlisle to report her observations to the ethics line. On March 7, 2019, Carlisle reported to Appellee's ethics line Appellant was falsifying his call log.

{¶5} Carlisle's complaint was assigned to Jody Stewart, a bank protection investigator, for investigation. Stewart compared portions of Appellant's call logs to the

records for Appellant's desk phone.  On March 26, 2019, Appellant was asked to report to a meeting with Stewart and Robin Streaty, an employee relations consultant for the bank.  At this meeting, the concerns regarding Appellant's call log were discussed. Appellant did not offer an explanation at this meeting for the discrepancies between his call log and the records from his desk phone, believing it in his best interests to keep quiet.

**{¶6}** In the meantime, Appellee held a call night on March 12, 2019.  Carlisle left the call night early due to a prior commitment.  Appellant believed Carlisle falsified her call report from this night, and reported his concerns to Dunn.  On March 27, 2019, Appellant made a complaint to the ethics lien regarding various concerns with Carlisle. Appellant was later informed his concerns were the result of a mix up.

**{¶7}** On May 10, 2019, Appellant informed Dunn via email he was resigning his position.  In his resignation, Appellant stated he intended to work until the birth of his daughter, take paternity leave, and not return at the end of his leave.  On the same day, Appellant was asked to attend a meeting with Dunn, Carlisle, and Streaty, at which they intended to terminate Appellant's employment.  Appellant was advised at this meeting Appellee had determined his call log was falsified.  Appellee accepted Appellant's resignation effective May 10, 2019 and did not allow him to remain employed through the end of his paternity leave, as outlined in his resignation.

**{¶8}** Appellant filed a complaint against Appellee on October 10, 2019, asserting claims of disability discrimination and retaliation pursuant to R.C. 4112, and a claim of

retaliation under R.C. 4113.52.  The trial court granted summary judgment on both claims and dismissed Appellant's complaint.[1]

**{¶9}** It is from the April 29, 2021 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

THE COMMON PLEAS COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED SUMMARY JUDGMENT IN FAVOR OF FIFTH THIRD BANCORP ('FIFTH THIRD") ON MR. COLE'S DISABILITY DISCRIMINATION CLAIM UNDER R.C. 4112.

**{¶10}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36 (1987). As such, we must refer to Civ. R. 56(C) which provides in pertinent part:

Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or

---

[1] Appellant states at page 2 of his brief he is not appealing the trial court's decision regarding his retaliation claims.

stipulation, and only from the evidence or stipulation, that reasonable minds

can come to but one conclusion and that conclusion is adverse to the party

against whom the motion for summary judgment is made, that party being

entitled to have the evidence or stipulation construed most strongly in the

party's favor.


{¶11} Pursuant to the above rule, a trial court may not enter summary judgment if

it appears a material fact is genuinely disputed. The party moving for summary judgment

bears the initial burden of informing the trial court of the basis for its motion and Identifying

those portions of the record demonstrating the absence of a genuine issue of material

fact. The moving party may not make a conclusory assertion the non-moving party has

no evidence to prove its case. The moving party must specifically point to some evidence

which demonstrates the moving party cannot support its claim. If the moving party

satisfies this requirement, the burden shifts to the non-moving party to set forth specific

facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77

Ohio St.3d 421, 429, 1997-Ohio-259, *citing Dresher v. Burt*, 75 Ohio St.3d 280, 1996-

Ohio-107.

{¶12} Appellant's complaint alleged he was subjected to a hostile and

discriminatory workplace based upon his disability.  R.C. 4112.02(A) provides:


It shall be an unlawful discriminatory practice:

(A) For any employer, because of the race, color, religion, sex,

military status, national origin, disability, age, or ancestry of any person, to

discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶13} Appellant acknowledges there is no direct evidence of discrimination in this case. "In a case like this where there is no direct evidence of disability discrimination, an employee can make out a prima facie case of disability discrimination by showing: (1) he or she was perceived as disabled, (2) the employer took an adverse employment action against the employee because of the perceived disability, and (3) the employee, although perceived as disabled, can safely and substantially perform the essential functions of the job in question. *Thomas v. PNC Bank, N.A.,* 8th Dist. Cuyahoga No. 106548, 2018-Ohio-4000, ¶ 4, *citing Hood v. Diamond Prods.*, 74 Ohio St.3d 298, 302, 1996-Ohio-259, 658 N.E.2d 738. Once the plaintiff establishes a prima facie case of discrimination, the burden then shifts to the employer to set forth some legitimate, nondiscriminatory reason for the action taken. *Hood* at 302, *citing Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.,* 66 Ohio St.2d 192, 197, 20 O.O.3d 200, 203, 421 N.E.2d 128, 132 (1981). If the employer establishes a nondiscriminatory reason for the action taken, then the employee must demonstrate the employer's stated reason was a pretext for impermissible discrimination. *Id.*

{¶14} Appellant first argues the court erred in finding because he resigned, he was not subjected to an adverse employment action. Appellant argues because Appellee terminated his employment pursuant to his resignation immediately rather than after the

birth of his child and his subsequent paternity leave, he was subjected to an adverse employment action.

{¶15} Generally, when an employee voluntarily resigns, he cannot claim he suffered an adverse employment action. *See*, e.g., *Hammon v. DHL Airways, Inc.*, 165 F. 3d 441, 447 (6th Cir. 1999). In *Baechle v. Energizer Battery Mg., Inc.,* N.D. Ohio No. 1:09 CV 237, 2010 WL 2342473 (June 9, 2010), the plaintiff wrote a note indicating she was retiring, and taking vacation until the paperwork came through. She placed the note, along with her keys and identification badge, on her supervisor's desk. She did not return to work, but sought FMLA leave. The plaintiff then indicated she planned to return to work the following month. Her medical leave was extended, and the employer filled her position a few months after she left the note indicating her intent to retire. The plaintiff then filed suit against the employer, claiming age discrimination.

{¶16} On summary judgment, the United States District Court for the Northern District, Eastern Division, determined despite the fact her resignation was somewhat prospective, the plaintiff had voluntarily resigned and therefore was not subject to an adverse employment action when she was not permitted to return to work and her position was filled. *Id.* at 13. While the plaintiff argues she had not resigned, the court concluded:

Ultimately, it is undisputed that on August 17, 2007 Plaintiff: (1) wrote a note indicating that she was retiring and taking vacation until the paperwork came through; (2) put the note, along with her keys and identification badge, on her supervisor's desk with instructions to pass the note along; (3) packed up some of her personal effects in a box; (4)

discarded other items, including an award given to her by Energizer; and (5) left the Westlake facility at approximately 12:30 p.m., several hours before the end of the workday. When viewed collectively, these undisputed facts are sufficient to establish that Plaintiff effectively resigned her employment on August 17, 2007.

**{¶17}** *Id.* at 12.

**{¶18}** We find important distinctions between *Baechle* and the instant case. In *Baechle*, the plaintiff left the premises, leaving behind her keys and her identification badge behind. Subsequently, she sought to return to work and was denied the opportunity. In contrast, in the instant case the record does not demonstrate Appellant took any action to leave his employment on the date he submitted his prospective resignation, May 10, 2019. Rather, he stayed at the office, participating in a meeting with his supervisors the same day. His emailed resignation clearly indicated he intended the resignation to be effective at the end of his anticipated paternity leave. The record demonstrates Appellant's child was born on May 30, 2019. Because Appellee terminated Appellant's employment pursuant to his resignation on May 10, 2019, Appellant therefore lost several weeks of wages, in addition to the paid paternity leave he would have been entitled to receive as an employee of Appellee. We therefore conclude in the posture of summary judgment, reasonable minds could conclude Appellant was subjected to an adverse employment action by Appellee.

**{¶19}** However, the second prong of a prima facie case requires not only Appellant demonstrate he was subjected to an adverse employment action, but further

the employer took an adverse employment action against the employee because of the perceived disability. *Thomas, supra, citing Hood, supra.* Appellant points to no evidence in the record demonstrating a nexus between the adverse employment action and his disability. In considering Appellant's claim the stated reason for his termination was pretextual, the trial court held:

> Although Cole alleges that Fifth Third's decision to terminate his employment was motivated by discriminatory reasons, Cole fails to point to any evidence of discrimination in the record. Indeed, Cole's own testimony establishes that he is unaware of any discrimination on the part of Fifth Third. When asked what facts he had to support that he was discriminated against and subjected to a hostile work environment because of his disability, Cole responded: "Off the top of my head I don't know." (Cole Dep. 175:25-176:4). Cole also testified that he was not sure how his disability related to the report regarding the falsification of the call logs. (Cole Dep. 180:6-180:8). Cole has failed to produce evidence sufficient to create a genuine issue of material fact as to whether Fifth Third's stated reason is pretextual.

**{¶20}** Judgment Entry, 4/29/21, p. 13.

**{¶21}** We agree with the trial court the record contains no evidence demonstrating Appellee took an adverse employment action against Appellant because of his perceived disability, and therefore, despite the fact we find the trial court erred in its conclusion

Appellant was not subjected to an adverse employment action because he voluntarily resigned, we find the trial court did not err in finding no material disputed facts exist as to whether Appellant made a prima facie case of discrimination.

**{¶22}** Further, under the "honest belief" rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish the reason was pretextual simply because it is ultimately shown to be incorrect. *Smith v. Chrysler Corp.,* 155 F. 3d 799, 806-807 (6th Cir. 1998). An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). The pre-termination investigation need not be optimal, and need not leave no stone unturned, but the key inquiry is whether the employer made a reasonably informed and considered decision. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285(6th Cir. 2012). The honest belief rule has been applied in Ohio state courts. *Mattessich v. Weathersfield Twp.,* 11th Dist. Trumbull No. 2015-T-0068, 2016-Ohio-458, 59 N.E.3d 629, ¶ 48.

**{¶23}** Appellant argues the trial court erred in finding Appellee had an honest belief he falsified his call logs because paragraphs 13 to 21 of his affidavit created issues of disputed fact as to whether the logs were falsified. Those paragraphs of Appellant's affidavit provide:

13. She [Carlisle] claims that she discovered I was falsifying my numbers on that date because she could clearly see my computer screens

through a window that separated our offices and that she knew I was not on the phone.

14. That statement was not correct.

15. When O'Shea was my manager, Lead Teller, Tess Tuvelle, bought us privacy screens which prevent anyone from seeing what is on the screen unless they are looking at the screen from directly in front of it.

16. In addition, based on a policy put in place when O'Shea was manager, which he appears to now try to backtrack on in paragraph 7 of his affidavit, we were permitted to record emails with customers as calls on the log so actually making a "call" was not necessary. His only ask was to make some calls, in addition to the emails, and this expectation was generally set in the mornings based on the previous day's success.

17. In addition, I was granted accommodations based on my disability which allowed me to take frequent breaks away from my desk.

18. We were allowed to call customers from our cell phones and had made calls to customers from my cell phone when I was on a break, which I properly recorded but which Carlisle may not have been aware because I could not always be seen by her while I was on my break, and while Carlisle now claims that bankers were "expected" to make calls from their desks, I was never told I could not make calls elsewhere, something even O'Shea does not seem to dispute, although he claims calls were "preferred" and that PBIIs were "expected," not required, to use their desk phones and not their cell phones.

19.  In addition, if your book of business had multiple members of the same family, you could disposition all the members if they were in your book, without having to call every person.

20.  This was hashed out with O'Shea before Carlisle became the manager of the Polaris Financial Center.

21.  I have always denied, and still deny, that I ever falsified any numbers on my call log.

**{¶24}** We note at the outset Appellant's statement in his affidavit Carlisle could not see his computer screen seems to contradict his deposition testimony he "thinks" he could see into Carlisle's office.  He testified in his deposition some of the offices had blinds, but he could not recall which ones.  Further, he testified he assumed Carlisle could see into his office, but didn't recall.  Cole Depo. P. 76.  A nonmoving party's contradictory affidavit must sufficiently explain the contradiction before a genuine issue of material fact is created.  *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 29.  Appellant's affidavit does not attempt to explain the apparent contradiction between his deposition testimony and his subsequent statement in his affidavit.

**{¶25}** Further, we find Appellant's affidavit may create a disputed fact as to whether his call logs were falsified, but it does not create a disputed fact as to whether Appellee had an honest belief his call log was falsified at the time of his resignation.  As noted by the trial court:

Cole denies that he ever falsified his call logs. (Cole Aff. ¶21.) Cole now submits in his opposition several explanations for the apparent discrepancies on the call log that Fifth Third investigated. (Cole Aff. ¶¶18-20.) But Cole admits that he did not offer these explanations at the meeting that took place on March 26, 2019. (Coll Aff. ¶ 36.) Cole also refused to submit a written statement to Fifth Third regarding the investigation. (Cole Dep. 126:6-126:15.)) These after-the-fact explanations that Cole now submits fail to establish that Fifth Third's reason for the purported adverse employment was pretextual.

**{¶26}** Judgment Entry, April 29, 2021, p. 12.

**{¶27}** Appellant now attempts to explain the discrepancies between his call logs and the records from his desk phone by claiming he made customer calls from his cell phone, emailed customers instead of calling, and was permitted to include multiple family members in his call log for single call. However, it is undisputed from Appellant's deposition and his affidavit he did not proffer any of these explanations to Appellee prior to his resignation. Therefore, we find Appellant's evidence does not create a disputed fact as to whether Appellee had an honest belief Appellant falsified his call logs at the time Appellee accepted Appellant's resignation effective May 10, 2019.

{¶28}  The assignment of error is overruled.  The judgment of the Delaware County Common Pleas Court is affirmed.


By: Hoffman, J.

Gwin, P.J.  and

Baldwin, J. concur