[Cite as *Everson v. Acme Co.*, 2025-Ohio-1335.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STEPHANIE EVERSON,

Plaintiff-Appellant,

v.

THE ACME COMPANY ET AL.,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0055**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2021 CV 01423

**BEFORE:**
Matt Lynch, Eugene A. Lucci, Robert J. Patton, Judges.
Eleventh District Court of Appeals, sitting by assignment.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Fred M. Bean*, Spitz, The Employee's Law Firm, for Plaintiff-Appellant and

*Atty. Sean T. Logue*, for Defendant-Appellee.

Dated:  April 15, 2025

**M. LYNCH, J.**

{¶1} Plaintiff-appellant, Stephanie Everson, appeals the judgment entry of the Mahoning County Court of Common Pleas, awarding summary judgment in favor of her former employer, defendant-appellee, The Acme Company ("Acme"), and dismissing her complaint. For the reasons that follow, we affirm the decision of the court below.

{¶2} In August 2021, Everson filed a complaint against Acme, alleging claims of (1) sex discrimination in violation of R.C. 4112.02 et. seq., (2) disability discrimination/failure to accommodate, and (3) retaliation in violation of R.C. 4112.02(I).

{¶3} Everson alleged Acme hired her as a truck driver in July 2019. Everson claimed she was reassigned to a slower truck after a male driver requested a "faster moving truck" and she was assigned inferior routes. These acts led to less pay because drivers were paid by the load. She further alleged she had made two internal complaints that went uninvestigated. Everson also alleged she was in a car accident on January 31, 2020, which caused a traumatic brain injury, broken hips, and severe nerve damage. As a result, she was considered disabled pursuant to R.C. 4112.01. Following her accident, her husband disclosed the severity of her injuries to Acme. Everson alleged that in the months ensuing, she repeatedly contacted Acme to return to work, even speaking with the president of the company, Daniel Zarlenga, Sr. ("Zarlenga"). It was not until June 2020 that Zarlenga informed Everson she had been terminated months earlier because she failed to show up for work.

{¶4} Acme filed a motion for summary judgment, contending Everson could not establish a prima facie case of gender discrimination and could not demonstrate that

Acme's articulated legitimate, nonretaliatory reason for Everson's termination was a pretext for discrimination and/or retaliation. Attached to Acme's motion were Everson's responses to Acme's interrogatories; the affidavit of the human resources/administrative office manager, Nicole Zarlenga ("Nicole"), who is Zarlenga's daughter; and Everson's responses to Acme's request for admissions.

{¶5} In her responses to Acme's interrogatories, Everson stated she was treated less favorably than a similarly situated employee because a mechanic had uttered two derogatory phrases to her. She could not recall specific dates or names. She recalled she was assigned a different truck after one of the new male hires did not want to drive an automatic-transmission truck.

{¶6} Nicole averred Everson was terminated after she failed to make contact following her husband's notification to Acme of her car accident, which is consistent with Acme's policy. Nicole reviewed 14 other employees, all male, who had been terminated for "no call no show." In Acme's request for admissions, Acme asked Everson about approximately 17 days in the several months preceding her accident in which she had failed to appear for work for various reasons, e.g., no car, sickness, no show, etc. Everson could only recall two dates she did not work when she was scheduled because she called off and "her medical card expired."

{¶7} Everson filed a brief in opposition to the motion for summary judgment, contending Acme did not offer any evidence or legal argument on her disability discrimination claim, she established a prima facie claim of gender discrimination, and she raised genuine issues of material fact as to truck reassignments, inferior routes, and the circumstances surrounding her termination. Everson submitted her affidavit, Acme's

answers to her interrogatories, a copy of the Acme Employee Handbook, a list of employees with their hire and termination dates, and the depositions of Zarlenga and Nicole.

{¶8} Zarlenga testified that drivers are paid by distance and load. The drivers choose their trucks based on availability on the day they are hired, and the drivers generally do not change trucks unless maintenance is scheduled; although, some drivers prefer certain models. Zarlenga denied ever speaking with or taking a complaint from Everson regarding the truck she was driving, the routes she was assigned, or when she was seeking to return to work in Spring 2020. He speculated Everson received her injuries after she was terminated for abandonment and was using the accident as an excuse.

{¶9} Acme's handbook contains policies regarding discrimination, attendance, job abandonment, requesting leaves of absence, family and medical leave absences, and disability leave.

{¶10} In relevant part, sections 4.7, 4.8, and 7.11 provide as follows:

**4.7 ATTENDANCE POLICY**
. . .
If any employee is absent from work for three consecutive days without informing his or her supervisor, it will be assumed that the employee has resigned and employment will be terminated as of the last day worked by the employee.

**4.8 JOB ABANDONMENT**
If an employee fails to show up for work or call[s] in with an acceptable reason for the absence for a period of three consecutive days, he or she will be considered to have abandoned his or her job and voluntarily resigned from the company.

**7.11 REQUESTING LEAVES OF ABSENCES**
A leave of absence (leave) is defined as an unpaid approved absence from work for a specified period of time for medical, parental, military, or other

approved reasons. If an employee finds that he or she must be out of work for more than three days, he or she should contact the Human Resources department to determine if a leave of absence may be necessary.

Leaves of absence will start on the date of request or date of need. While on leave, an employee must contact the Human Resources department at least every 30 days. Failure to contact HR upon request may result in voluntary termination of employment. Failure to return to work upon the expiration of the leave or refusing an offer of reinstatement for which the employee is qualified will also result in voluntary termination of employment.

[This section also specifies the documentation required for leave, the status of job benefits while on leave, and the requirements for returning to work when leave has expired.]

{¶11} Nicole testified Acme's attendance policy "expected [employees] to provide reasonable attendance, documentation for any absences." She explained that Everson's husband contacted her on January 31, 2020, and informed her that Everson had been in a car accident. The following day, Nicole requested medical documentation, but she never received a response. On February 6, 2020, she terminated Everson for job abandonment.

{¶12} The trial court awarded summary judgment to Acme on Everson's claims, finding there was no dispute Everson was terminated after she was absent for three days with no communication pursuant to Acme's job abandonment policy in its employee handbook.

{¶13} The court found the undisputed material facts were that Acme hired Everson in 2019, Everson could not identify a similarly situated male driver who was provided with a better functioning truck or assigned a more lucrative route, Everson violated the job abandonment policy in the employee handbook, Everson never provided any documentation of any injury to Acme, and Everson was unable to identify a male

employee who was hired after her termination that received higher pay/better benefits than she had.

{¶14} The court further found Acme was entitled to summary judgment as a matter of law because Acme had a legitimate, nondiscriminatory reason for Everson's termination, i.e., company protocol, Everson failed to introduce any evidence to support her gender discrimination claim, Everson did not demonstrate a retaliation claim, and Everson supported her claims solely with allegations.

{¶15} Before she filed her notice of appeal, Everson filed a motion for reconsideration in the trial court, contending Acme never moved for summary judgment on the second count of her complaint (disability discrimination/failure to accommodate). The trial court found it was divested of jurisdiction when Everson filed an appeal, thus it abstained from considering Everson's motion for reconsideration.

{¶16} Everson raises five assignments of error for our review:

[1.] The trial court erred in granting summary judgment as to Count II as appellees never moved for summary judgment as to Count II.

[2.] The court erred in granting summary judgment as to Everson's disability discrimination claims (Count II).

[3.] The trial court erred in granting summary judgment as to Everson's gender discrimination claim (Count I).

[4.] The trial court erred in granting summary judgment as to Everson's retaliation claim (Count III).

[5.] The trial court erred in ruling that Everson had not established a dispute of fact as to pretext for discrimination or retaliation.

{¶17} An appellate court conducts a de novo review of a trial court's decision to grant summary judgment, using the same standards as the trial court. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Before the trial court may grant summary

judgment, it must determine that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. Civ.R. 56(C); *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993).

{¶18} "The United States Supreme Court has set forth a burden of proof framework that applies to federal employment discrimination cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That framework also applies to [Ohio Revised Code] Chapter 4112 discrimination cases." (Citation omitted.) *Janiszewski v. Belmont Career Ctr.*, 2017-Ohio-855, ¶ 18 (7th Dist.).

{¶19} "Under the *McDonnell Douglas* test, the plaintiff must first prove, by a preponderance of the evidence, a prima facie case of discrimination. Second, if the plaintiff does so, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' *McDonnell Douglas* at 802. Third, if the defendant satisfies its burden, the plaintiff must then prove, by a preponderance of the evidence, that the defendant's reason was merely 'a pretext for discrimination.' *McDonnell Douglas* at 804." *Janiszewski* at ¶ 19.

{¶20} "A plaintiff may establish pretext by directly showing a discriminatory reason more likely motivated the employer or by indirectly showing the employer's explanation is not credible. However, the plaintiff must not only prove that the proffered pretext was

false, but also that discrimination was the real reason. The factfinder's disbelief of the reasons put forward by the defendant may, together with the elements of a prima facie case, suffice to show intentional discrimination." (Internal citations omitted.) *Burchett v. E. Liverpool Dodge Chrysler Plymouth, Jeep*, 2002-Ohio-3045, ¶ 18 (7th Dist.).

**{¶21}** "Further, under the 'honest belief' rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish the reason was pretextual simply because it is ultimately shown to be incorrect." *Cole v. Fifth Third Bancorp.*, 2022-Ohio-774, ¶ 22 (5th Dist.). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Id.*, quoting *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). "The pre-termination investigation need not be optimal, and need not leave no stone unturned, but the key inquiry is whether the employer made a reasonably informed and considered decision." *Id.*

**{¶22}** In her first and second assignments of error, Everson contends the trial court erred by awarding summary judgment to Acme on her disability discrimination/failure to accommodate claim because Acme did not move for summary judgment on this claim and she set forth a prima facie claim of discrimination.

**{¶23}** Disability discrimination under R.C. 4112.02(A) may include both an employer taking an adverse employment action based on an employee's disability and an employer's failure to make a reasonable accommodation for an employee's disability. *Caldwell v. Niles City Schools*, 2021-Ohio-1543, ¶ 48 (11th Dist.).

**{¶24}** For an adverse-employment-action claim, Everson was required to establish a prima facie case by demonstrating (1) she was disabled, (2) Acme took an adverse employment action because, at least in part, she was disabled, and (3) she, though disabled, can safely and substantially perform the essential functions of the job in question. *Id.* at ¶ 49, citing *Hood v. Diamond Prod., Inc.*, 74 Ohio St.3d 298 (1996), paragraph one of the syllabus. An employee may satisfy the third element by showing that she could have performed the essential functions of the job with a reasonable accommodation, if necessary. *Id.* "Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the action." *Id.* at ¶ 50, citing *Hood* at 302. If the defendant does so, the plaintiff must show that the defendant's stated reason was a pretext for impermissible discrimination. *Id.*

**{¶25}** A failure-to-accommodate claim is based on Ohio Adm. Code 4112-5-08(E)(1), which provides that "[a]n employer must make reasonable accommodation(s) to the disability of an employee or applicant, unless the employer can demonstrate that such an accommodation(s) would impose an undue hardship on the conduct of the employer's business." *Id.* at ¶ 51. Everson was required to demonstrate (1) she was disabled, (2) Acme was aware of the disability, and (3) she was an otherwise qualified individual with a disability, i.e., she satisfied the prerequisites for the position and could perform the essential functions of the job with or without reasonable accommodation. *Id.* at ¶ 52; *Shaver v. Wolske & Blue*, 138 Ohio App.3d 653, 663-664 (10th Dist. 2000).

**{¶26}** An employee's request for an accommodation triggers an employer's obligation to participate in the interactive process of seeking an accommodation. *Caldwell*, 2021-Ohio-1543, at ¶ 53 (11th Dist.). To show that an employer failed to

participate in the interactive process, a disabled employee must demonstrate (1) the employer knew about the employee's disability, (2) the employee requested accommodations or assistance for her disability, (3) the employer did not make a good faith effort to assist the employee in seeking accommodations, and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. *Id.*

**{¶27}** Everson failed to establish a prima facie case of discrimination/failure to accommodate because she did not satisfy the elements of having a "disability" for purposes of Revised Code Chapter 4112 and she never gave Acme any information or documentation of her injuries.

**{¶28}** Pursuant to R.C. 4112.01(A)(13), "'[d]isability' means a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment."

**{¶29}** To prove she had a disability, Everson was required to demonstrate three elements: (1) the condition constitutes a physical or mental impairment, (2) the life activity purportedly curtailed as a result of the physical or mental impairment constitutes a major life activity, and (3) the physical or mental impairment substantially limits this major life activity. *Corrado v. Warren-Trumbull Cty. Pub. Library*, 2006-Ohio-4661, ¶ 29 (11th Dist.).

**{¶30}** Everson submitted no evidence that she has or suffers from a disability. As the nonmoving party on summary judgment, Everson was required to set forth specific facts to show that there was a genuine issue of material fact to be tried using evidentiary quality materials. *See Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Instead, she

rested upon the conclusory statements in her complaint and affidavit in response to Acme's motion for summary judgment. Besides Everson's bare assertions that she suffered from a traumatic brain injury, a broken hip, bulging discs, and nerve damage, she never submitted proof of injury or medical documentation to Acme. Further, there is no evidence of her injuries in the record, much less a disability that is a physical or mental impairment that curtails a major life activity.

{¶31} While Everson claims Acme did not move for summary judgment against her for this count of the complaint, Acme's motion reveals otherwise. Acme argued that Everson could not "show that Acme's reason for ending her employment was a pretext." This argument applies to both Everson's gender discrimination claim and her disability/failure to accommodate claim. Acme argued Nicole's affidavit explained the sequence of events leading to Everson's termination, i.e., Everson's husband notified Acme that Everson was injured in an automobile accident without providing any details, Nicole requested medical documentation, Everson failed to respond, Everson was terminated in accordance with Acme's job abandonment policy. Everson acknowledged she never gave Acme any medical documentation between the time of her injury and the date of her termination, February 6, 2020. Nicole testified that at least 14 other employees had been terminated pursuant to Acme's job abandonment policy for the same reason. Both Zarlenga and Nicole denied that Everson made two formal complaints of discrimination.

{¶32} The motion asked the court to "enter summary judgment for Acme and dismiss this lawsuit with prejudice."

Case No. 24 MA 0055

{¶33} Everson was then required to prove, by a preponderance of the evidence, that Acme's reason for termination was merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. *See also Corrado*, 2006-Ohio-4661, at ¶ 36 (11th Dist.) (to overcome the defendant's motion for summary judgment after it has pointed to some evidence that affirmatively demonstrates the plaintiff had no evidence to support her disability claim, the plaintiff was required to set forth specific facts to show there was a genuine issue to be tried and could not rest upon conclusory statements in her complaint or affidavit in response).

{¶34} Instead, Everson inexplicably argued "defendants did not move for summary judgment as to Everson's disability discrimination claims, so those claims cannot be dismissed." Accordingly, the trial court did not err in granting summary judgment in favor of Acme on Everson's disability discrimination claim.

{¶35} Everson's first and second assignments of error are without merit.

{¶36} In her third and fourth assignments of error, Everson contends Acme discriminated against her because of her gender and terminated her in retaliation because she made complaints to Zarlenga. In her fifth assignment of error, Everson contends the trial court erred in ruling that Everson did not demonstrate a dispute of material fact as to pretext for discrimination or retaliation.

{¶37} Pursuant to R.C. 4112.02(A), it is an unlawful discriminatory practice "[f]or any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to

employment." To establish a prima facie case of discrimination under R.C. 4112.02(A), a plaintiff must show (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was treated differently than similarly situated individuals. *Gast v. City of Martins Ferry*, 2019-Ohio-1147, ¶ 6 (7th Dist.).

**{¶38}** Pursuant to R.C. 4112.02(I), it is an unlawful discriminatory practice "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." "A prima facie case of retaliation is established by showing: 1) the plaintiff engaged in a protected activity; 2) the defendant knew plaintiff engaged in this activity; 3) the defendant took an employment action adverse to the plaintiff; and, 4) there was a causal connection between the protected activity and the adverse employment action. A plaintiff's burden to prove a prima facie case is minimal." (Internal citations omitted.) *Burchett*, 2002-Ohio-3045, at ¶ 14 (7th Dist.).

**{¶39}** "[A]n 'adverse employment action' is a materially adverse change in the terms and conditions of the plaintiff's employment. Employment actions that result in mere inconvenience or an alteration of job responsibilities are not disruptive enough to constitute adverse employment actions." (Internal citations omitted.) *Wu v. Northeast Ohio Med. Univ.*, 2019-Ohio-2530, ¶ 31 (10th Dist.). "Instead, the action must constitute 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a

significant change in benefits.'" *Id.*, quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). "Although adverse employment actions are not limited to economic losses, 'not everything that makes an employee unhappy is an actionable adverse action.'" *Id.*, quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996).

**{¶40}** Everson argues that she established prima facie cases of discrimination and retaliation under R.C. 4112.02 because she was given inferior truck routes, loads, and vehicles. She stated that a mechanic made two derogatory statements to her, and she was given a different truck after another driver requested a truck without an automatic transmission. She alleged this resulted in lower pay because drivers are paid by the load/route. Acme then retaliated by terminating her after she made two formal complaints.

**{¶41}** Everson's allegations do not rise to the level of "adverse employment actions." She did not provide any evidence of a materially adverse change to the conditions or term of her employment. The trial court was correct that Everson failed to identify a similarly situated male driver at Acme who was provided with a better functioning truck or a more lucrative route and that she was unable to identify a male employee who was hired after her termination who received higher pay or better benefits than she had received.

**{¶42}** Even assuming, arguendo, that Everson established a prima facie case of gender discrimination and retaliation, once Acme established a legitimate, nondiscriminatory reason for her termination, Everson was then required to prove, by a preponderance of the evidence, that Acme's reason was merely a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Again, "'[i]n a motion for summary

judgment, *McDonnell Douglas'* shifting evidentiary burdens are *affirmative* for both the movant and the non-movant.'" (Emphasis added.) *McGlumphy v. Cty. Fire Protection Inc.*, 2016-Ohio-8114, ¶ 20 (11th Dist.), quoting *Berenda v. Buzek, Kiplinger & Assoc.*, 2002 WL 68374, *4 (8th Dist. Jan. 17, 2002), citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 666 (6th Cir.1999) and *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255, (1981). "The moving parties must either demonstrate the absence of a genuine issue of material fact as to at least one element of a prima facie case of [discrimination] or provide a legally sufficient explanation for the termination. If they do so, the burden then shifts to the non-moving party to either demonstrate the existence of a genuine issue of material fact as to the challenged element(s) of the prima facie case or to establish that the proffered nondiscriminatory explanation was pretextual." *Id.*

**{¶43}** Everson failed to meet her burden as the nonmoving party on summary judgment by failing to submit any evidence contemplated by Civ.R. 56(C) that demonstrated Acme's reason for terminating her was a pretext or was not credible. Everson's argument, that she introduced evidence of a factual dispute because she initially advised Acme of her disability when her husband informed Acme of her car accident and then reached out almost two months later, starting on March 26, 2020, to alert Acme she was physically able to return to work, merely supports that she was terminated for violating Acme's company policy. Accordingly, the trial court did not err in granting summary judgment in favor of Acme on Everson's claims for gender discrimination and retaliation.

**{¶44}** Everson's third, fourth and fifth assignments of error are without merit.

**{¶45}** The judgment of the Mahoning County Court of Common Pleas is affirmed.

Case No. 24 MA 0055

[Cite as *Everson v. Acme Co.*, 2025-Ohio-1335.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled, and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

_____
**JUDGE MATT LYNCH,**
**ELEVENTH DISTRICT COURT OF APPEALS,**
**SITTING BY ASSIGNMENT**

_____
**JUDGE EUGENE A. LUCCI,**
**ELEVENTH DISTRICT COURT OF APPEALS,**
**SITTING BY ASSIGNMENT**

_____
**JUDGE ROBERT J. PATTON,**
**ELEVENTH DISTRICT COURT OF APPEALS,**
**SITTING BY ASSIGNMENT**

### <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**